COLE, Judge.
The issue in this domestic case is whether or not a husband who paid his wife’s car note should be granted a credit on his alimony payments.
Plaintiff Lynn Thompson and defendant Rosby Thompson were legally separated by a judgment granted in Mrs. Thompson’s favor on October 7, 1981. At that time defendant was ordered to pay $600 a month alimony pendente lite. There were no children born of this marriage. Various rules were subsequently filed concerning the alimony, only one of which is pertinent here: the rule for contempt and past due alimony which was heard March 11, 1982.
In that hearing the issue was whether or not plaintiff had agreed to allow defendant to pay the note on the community motor vehicle which she was driving, in lieu of an equal amount of alimony. (The monthly amount of the note was $263.41.) The trial court concluded such an agreement had been made. After calculating the alimony owed and subtracting the amount of the vehicle payments, the court concluded defendant did not owe any money at that time.[1] Judgment was rendered dismissing the rule for contempt and past due alimony [2] and plaintiff has appealed.
We note the general rule in Louisiana is an alimony or child support judgment remains in full force and effect in favor of the party to whom it is awarded until the party liable applies to the court and obtains a modification. See La. Civ. Code art. 232; Seifert v. Seifert, 374 So.2d 157 (La.App. 1st Cir.1979); and Halcomb v. Halcomb, 352 So.2d 1013 (La.1977). However, the rule is not without exceptions. The party in whose favor alimony has been granted may make arrangements with the party liable for payment in a way other than direct payment or may waive rights under the judgment. Seifert, supra. The key question in all such cases is whether or not there was an agreement between the parties as to the alternate method of payment. See Bruner v. Bruner, 356 So.2d 1101 (La.App. 2d Cir.1978), aff’d, 364 So.2d 1015 (La.1978), and Odum v. Odum, 273 So.2d 576 (La.App. 1st Cir.1973).
In Bruner, the appellate court held the trial court erred in granting a credit to the husband for certain payments made to third parties on the wife’s behalf. The court stated, p. 1106:
“There is no evidence showing these payments were made at the request of or with the consent of appellee. Therefore, under the jurisprudence these credits should not have been allowed.” (Citation omitted.)
In Odum the husband sought credit for sums paid to various dentists, doctors, and *860 merchants for the benefit of one child and for payments made directly to another child. The trial court had disallowed any credits, believing the jurisprudence stated there could be no change in the alimentary obligation until the judgment was modified by the trial court. The appellate court agreed there should be no credit for the payments made to the dentists, doctors and merchants because to do so would violate the basic concept that the party receiving alimony and child support has the right to disburse the support payments as she sees fit and that the husband can receive no credit for payments he makes on his own accord. As to the payments made directly to the other child, the court found the wife had agreed to this arrangement and therefore held the husband should be given credit for such payments.
With this principle in mind, we need only to determine whether or not the evidence in this case showed there was such an agreement between the parties. While we note the record is not overly abundant as to evidence on this crucial issue, we are satisfied the court committed error in concluding such an agreement had been made. The following testimony is pertinent to our decision.
Mrs. Thompson responded to questions as follows:
“Q. You intended to take out the six hundred dollars and pay the G.M. A.C. note of two sixty-three forty-one.
A. If I received the six hundred dollars, yes.
Q. Right. All right. Since then do you know whether or not your husband has made those payments?
A. I would have to call to Houston once a month to find out if the payments have been made. He makes no contact with me.
Q. Okay. Well, have you called Houston to see whether or not he has made every payment?
A. Yes.
Q. Through March.
A. He has.
Q. So he has actually paid two hundred and sixty-three dollars and forty-one cents to your truck note that you are driving that you would have paid ordinarily. Is that correct?
A. Yes. The G.M.A.C. bill is also in his name.
Q. Right. But you were going to pay it—
A. Yes.
Q. —if you had gotten the six hundred dollars; and since then he has been paying it.”[3]
When questioned as to whether or not he had promised to pay the note in lieu of an equal amount of alimony, Mr. Thompson responded as follows:
“A. There was no mention of alimony whatsoever, ma’am. I told her I would furnish her transportation as long as I could afford it and that I would take care of the truck note—

Q. I said you recognize or you admit that the alimony that is now past due has not been paid.
A. That is only because I can’t afford it. There is no way humanly possible that I can afford the payments.”
The trial court commented on the facts as follows:
“Mrs. Thompson on the stand stated that part of the six hundred dollars which she was allowed in the judgment was to include or did include a payment on the truck which she had possession of. She didn’t make the payments, but rather Mr. Thompson made the payments and as a matter of fact he is almost two hundred dollars over the amount that would be due.

*861 “I find that there was an agreement because she knew that he was paying it because she would call Houston and she would find out.”
We conclude the trial court misconstrued the nature of the arrangement between Mr. and Mrs. Thompson. At most, Mrs. Thompson was acquiescing in her husband paying the joint obligation on the motor vehicle. Admittedly, if he had not made the payments it was her intent to use the alimony payments to discharge the debt. This is different, however, from requesting that he pay the note or consenting that he could decide how that portion of her alimony payment would be utilized. Mr. Thompson admitted there was no mention of alimony within the context of his desire to provide his wife transportation.
In Dubroc v. Dubroc, 380 So.2d 672 (La. App. 4th Cir.1980), affirmed 388 So.2d 377 (La.1980), it was stated:
“... if the parties clearly agree to a suspension of the payments and such agreement does not interrupt the child’s maintenance or upbringing or otherwise work to his detriment, the agreement should be enforceable. (Emphasis added.) (388 So.2d, at p. 380.)
The Supreme Court in Dubroc stated an enforceable agreement between the parties must meet the requisites for a conventional obligation. We find the instant circumstances do not meet the criteria. The parties did not “clearly agree” payments on the vehicle were in lieu of part of the alimony. Of course, acquiescence by the wife in the arrangement does not amount to a waiver of that part of the alimony. Dubroc, supra; McGovern v. Tatman, 410 So.2d 779 (La.App. 4th Cir.1982).
While we agree that under the circumstances of this case it is inequitable for the husband to pay both the G.M.A.C. note and the full amount of alimony awarded,[4] we find that such is the state of the law. A better rule would be to apply the harsh rules enunciated only to those eases involving child support. As between two adults, a tacit understanding or equitable result as the parties here obtained should be permissible in law. To that extent, we disagree with the application of the rationale of Du-broc, but find the jurisprudence presently does not permit the distinction.[5]
Appellant contends she is entitled to attorney fees and court costs for the present litigation as well as for a previous rule for contempt and past due alimony. Because we have concluded an arrearage exists and reverse the dismissal of appellant’s case, we award appellant the sum of $300.00 as attorney fees in the instant matter. We do not, however, construe appellee to have been in contempt of court.
As to the previous rule, we note the stipulated judgment was rendered on January 13, 1982, and granted appellant court costs plus $400 attorney fees. The record does not indicate this judgment was appealed; therefore it is now definitive. La.Code of Civ.P. art. 1842. Moreover, that judgment has no connection whatsoever to this appeal. Since the judgment is definitive, appellant is entitled to execute upon that judgment to collect the sums awarded. There is absolutely no procedure by which this court can or should aid her in that execution.
For these reasons, the judgment of The Family Court is reversed and judgment is now rendered in favor of Lynn Marie Si-monson Dunn Thompson, and against Rosby Lennon Thompson, for accrued alimony pendente lite in the amount of $1,120.95, together with legal interest thereon from date of judicial demand, until paid; and said judgment is hereby made executory.
Judgment is further rendered in favor of Lynn Marie Simonson Dunn Thompson, and against Rosby Lennon Thompson, for the *862 additional sum of $300.00 representing attorney fees.
All costs herein are assessed against ap-pellee, Rosby Lennon Thompson.
REVERSED AND RENDERED.

. It was proven at trial Mr. Thompson had made certain alimony payments of $1,500 and owed a balance of $1,120.95. Testimony at trial varied as to the amount he had paid G.M. A.C. for the monthly notes, but cancelled checks introduced show a total of $1,591.85 paid for the months October (1981) through February (1982).

. On the same day a rule for alimony reduction was also heard but that judgment has not been appealed and does not concern us here.

. The record shows Mr. Thompson had never made his monthly alimony payments. Instead, he made two lump sum payments, one for $500 and the other for $1,000.

. In that appellee was discharging a community obligation in making payments upon the G.M.A.C. note, he is free to seek an appropriate credit in any property settlement between him and his wife. We reject, however, appellee’s alternative argument that appellant is personally liable unto him for the amount paid on the note under the theory of quasi-contract.

. Cf. Siefert and Bruner, supra.