1997 ME 138

**David C. ROBERTS**

v.

**Cecile ROBERTS.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 16, 1997.

Decided June 25, 1997.

Gary W. Libby, Portland, for plaintiff.

Donna A. Bailey, Saco, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

[¶ 1] Cecile Roberts appeals from the judgment entered in the Superior Court (Cumberland County, *Wheeler, J.*), *inter alia,* granting her motion requesting that the court find David C. Roberts in contempt for failure to pay her alimony pursuant to the judgment of divorce granted to the parties on June 17, 1988. Cecile contends the court erred by allowing David certain credits against the alimony arrearage owed to her. We agree, and accordingly, we vacate the judgment.

[¶ 2] The record discloses the following undisputed facts: Incorporated into and made a part of the judgment of divorce granted to the parties on June 17, 1988, was the agreement of the parties that provided in pertinent part:

> The parties own real estate, located at 11 Hillview Road, Gorham, Maine, in joint tenancy.... Said real estate is subject to a home equity mortgage from Key Bank of Southern Maine .... The parties have had said real estate appraised by Richard Lewis Sawyer and hereby agree that their equity in said real estate is $121,236.71. Husband and Wife have agreed that they will convey their interest in said real estate to their daughter, Lynn O'Leary, for its appraised value. The parties shall divide the net equity realized from said sale equally between themselves. It is understood that the said Lynn O'Leary shall rent said real estate to Wife and to the parties' other adult daughter, Diane Webster, following the sale of said real estate. In order to facilitate the purchase of said real estate by the said Lynn O'Leary, it may be necessary for Husband to make a loan to the said Lynn O'Leary. Husband hereby agrees, if necessary, to loan said Lynn O'Leary up to Eight Thousand Dollars ($8,000) from his share of said proceeds.
>
> ....
>
> Within a reasonable time after the date when the pending divorce becomes final, Husband shall purchase for Wife a suitable automobile, in good running condition, acceptable to Wife, at a cost not to exceed Five Thousand Two Hundred Dollars ($5,200). Husband shall convey said automobile to Wife free and clear of all encumbrances.
>
> ....
>
> Each of the parties is currently employed. Husband is currently receiving Social Security Retirement benefits. Wife is now 60 years old. At age 62, Wife shall also become eligible to receive Social Security Retirement benefits. From the date of the execution of this Agreement until the date when Wife attains the age of 62 years, Husband shall pay to Wife as and for alimony, the sum of Four Hundred Dollars ($400) per month. Once Wife attains the age of 62 years and becomes eligible to receive Social Security Retirement Benefits, Husband's said alimony obligation shall be reduced to the sum of Two Hundred Dollars ($200) per month, until such time as the aforementioned Lynn O'Leary shall complete the sale of the parties' aforementioned marital residence which they are conveying to the said Lynn O'Leary. Wife shall receive one-half of the parties' current net equity in said marital residence from the said Lynn O'Leary at the time said sale is completed. Once Wife has received her half of said net equity, Husband's obligation to pay alimony shall terminate. Notwithstanding the above, Husband's obligation to pay alimony hereunder shall terminate sooner than provided above if Wife remarries or dies.
>
> Husband shall continue Wife on his John Hancock Employees' Group Health Insurance Policy for as long as his [sic] is allowed to do so. In addition, while Husband is providing health insurance coverage to Wife, Husband shall pay any deductible amounts and uninsured health-related expenses incurred by or on behalf of Wife for medical, dental, hospital, and optometrical care.

[¶ 3] David received $60,618.38 as his portion of the equity in the family home and extended a loan of $7600 to O'Leary to complete her purchase of that property. Cecile received a promissory note from O'Leary in the amount of $55,880 for her portion of interest in the house to be paid to her at the time of the sale of the house. The house was

appraised at $139,000 at the time of the divorce judgment with an outstanding loan of $18,000. The present fair market value is $104,000. The $18,000 loan has been paid. There was no agreement between the parties or provision in the divorce judgment concerning the date of sale of the property by O'Leary.

[¶ 4] In the interim between the date of the divorce judgment and July 20, 1994, when David filed a motion to amend the judgment to either decrease or eliminate alimony, there was no modification or amendment to the judgment. In response to David's motion, Cecile filed a motion for contempt and enforcement of the judgment.

[¶ 5] After a hearing on the motions of the parties, the court found that: The total amount of alimony owed Cecile through July 1996 was $22,800; in 1988 David had made six alimony payments of $400 each to Cecile for a total of $2400; in addition, David had voluntarily paid $931.76 in COBRA payments for health insurance for Cecile, an overpayment of $2,133.75 for the automobile for Cecile, and $7600, pursuant to a signed agreement between O'Leary and David stipulating that the $7600 loaned by David to O'Leary to effect the purchase of the marital home from her parents, would be repaid by paying to Cecile $100 per month "in lieu of the $100 extra support payment due [Cecile] during the payback period." The court credited these amounts to the arrearage and found that the total arrearage in alimony was $9,734.49. Accordingly, the court found David in contempt of the requirement of the divorce judgment that he pay Cecile alimony monthly. The court ordered that the arrearage be paid by David by maintaining his John Hancock life insurance policy in the amount of $10,500 with Cecile as the irrevocable beneficiary.

[¶ 6] The court further found that: As a result of the downturn in the real estate market, Cecile in all likelihood would not receive her share of the equity in the former marital home if it were sold; David continues to have the ability to pay alimony as provided by the judgment and Cecile continues to need support; and David's financial circumstances have not changed and Cecile's need

for support "is no less today." Accordingly, the court denied David's motion to reduce or eliminate his obligation to pay alimony to Cecile. From the judgment entered, Cecile appeals.

[¶ 7] Cecile contends the trial court erred as a matter of law by crediting the total alimony arrearage David owed to Cecile with other voluntary payments made by David. We agree. The present case does not present an appeal from a judgment of divorce providing for the award of alimony to one of the parties. In those instances, we recognize that the award of alimony, as an incident to the granting of a divorce, is within the sound discretion of the trial court and its judgment is entitled to very substantial deference. "As long as there is rational or credible support in the record" for the decision on alimony, the judgment will not be overturned. *Brandis v. Brandis*, 489 A.2d 1110, 1111 (Me.1985) (citations omitted). On the filing of a proper motion by one of the parties, the trial court, pursuant to 19 M.R.S.A. § 721(5) (Supp.1996), "may alter or amend a decree for alimony or specific sum when it appears that justice requires it. . . ." We have previously stated that when the question is one of modification of alimony, "[a]bsent a violation of some positive rule of law, this Court will overturn the trial court's decision of such a question only if it results in a plain and unmistakable injustice, so apparent that it is instantly visible without argument." *Smith v. Smith*, 419 A.2d 1035, 1038 (Me.1980) (citations omitted).

[¶ 8] Here, the issue, not previously precisely addressed by us, is whether the trial court violated a positive rule of law by crediting against the arrearage owed Cecile those voluntary payments made by David prior to July 20, 1994, the date he filed a motion to alter or amend the provision in the judgment relating to alimony. We conclude that it did.

[¶ 9] The law is well established "that jurisdiction over divorce and incident relief is purely statutory. The authority of the divorce court over matters of alimony, counsel fees and the custody and support of minor children must be found in the statutes or it does not exist." *Wood v. Wood*, 407 A.2d

282, 285–86 and n. 3 (Me.1979) (citations and quotations omitted). In *Wood*, for the first time, we ruled on the power of the trial court to modify a child support order retroactively thereby excusing the parent paying support from paying the amount of the accrued obligation. We noted that nothing in the language of 19 M.R.S.A. § 752 (Supp.1978)[1] authorized modification or cancellation of child support arrearages by retroactive application of a modification order. We reaffirmed that the policy of the law is to discourage self-help and to encourage resort to courts when modification of divorce decrees is justified. We discussed the purpose and importance of support orders and the necessity of the ability to rely on the financial assurance provided by an outstanding court order until there is a formal legal action seeking a modification. We reasoned that if section 752 granted courts the power to reduce an arrearage, by the same token courts may increase past-due installments. We concluded that the legislative policy behind section 752 did not contemplate such a result and could only be construed to authorize the court's prospective modification of child support orders. We recognized two exceptions to the rule: one, as of the date the custodial parent is legally relieved of that obligation by the child's death, emancipation, or achieving the age of majority, or otherwise;[2] and two, the court may, in its discretion, make its modification decree retroactive to the date the application for modification was filed. *Id.* at 287–88.

[¶ 10] We note that nothing in 19 M.R.S.A. § 721 (Supp.1996) authorizes modification or cancellation of an alimony arrearage by the retroactive application of a subsequent order. We are cognizant of the division in the decisions of other jurisdictions. Some jurisdictions deny such credits against an alimony arrearage, *see, e.g., Chappell v. Chappell*, 253 So.2d 281 (Fla. Dist.Ct.App.1971); *In re Marriage of Dwan*, 108 Ill.App.3d 808, 64 Ill.Dec. 340, 439

N.E.2d 1005 (1982); *Thompson v. Thompson*, 428 So.2d 858 (La. Ct.App.1983), and others conclude that an exception may be made to allow a setoff or "credit" when equitable considerations demand. *See, e.g., Lopez v. Lopez*, 125 Ariz. 309, 609 P.2d 579 (App.1980); *Hawkins v. Hawkins*, 592 So.2d 843 (La.Ct.App.1991).

[¶ 11] We conclude, however, that our reasoning and the conclusions expressed in *Wood v. Wood*, are equally applicable in delineating the authority of the trial court as it relates to the determination of the amount of the arrearage owed pursuant to an award of alimony provided by a judgment of divorce granted to the parties. The two exceptions to the articulated general rule relating to child support can readily be adapted to a circumstance involving the arrearage owed on an alimony award, i.e., by reason of an event occurring on a certain date the payor of alimony was legally relieved of that obligation or the exercise of the court's discretion to allow an adjustment of the arrearage retroactively to the date of the filing of a motion to modify the alimony payments required by the decision of the court. *See Hale v. Hale*, 604 A.2d 38, 39 n. 1 (Me.1992) (order only reduced arrearage accumulated since payor of alimony filed motion to modify decree).

[¶ 12] It was within the discretion of the trial court to grant or deny Cecile's motion requesting that David be found in contempt for noncompliance with the divorce judgment granted the parties. It was also within the court's discretion to provide when and in what manner the arrearage owed to Cecile would be paid by David. *See* 19 M.R.S.A. § 774 (1981 & Supp.1996) (setting forth methods of enforcement of decree for alimony available to the court). Because it lies within the discretion of the trial court to fashion the time and method for David to pay

---

1. 19 M.R.S.A. § 752(12) (Supp.1996) presently provides in pertinent part:

   Child support orders may be modified retroactively, but only from the date that notice of a petition for modification has been served upon the opposing party pursuant to the Maine Rules of Civil Procedure.

2. This would include the child having completed secondary education or achieving the age of 19 years, if such a time period were provided in the initial decree, or regaining physical or mental disabilities the lack of which had, in the discretion of the court, required parental support during the period of such disability.

the full alimony arrearage in the amount of $20,400 owed by him to Cecile, we remand this matter for that purpose.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

DANA, J., dissenting.

[¶ 13] I respectfully dissent. By virtue of David's agreement with his daughter, Cecile received $7,600 in cash over a period of two and a half years and David's alimony arrearages should be set off by that amount.

[¶ 14] I agree that a court cannot credit payments made by the obligor spouse to third parties on behalf of the obligee spouse because such a setoff would allow the obligor to unilaterally modify a court's order to pay alimony to the obligee. *E.g., In re Marriage of Dwan,* 108 Ill.App.3d 808, 64 Ill.Dec. 340, 344, 439 N.E.2d 1005, 1009 (1982). Furthermore, the obligor's payments to third parties prevents the obligee spouse from disbursing the money as she sees fit. *E.g., Lopez v. Lopez,* 125 Ariz. 309, 609 P.2d 579, 581 (App. 1980). When, however, the obligee spouse receives the cash payments herself, as a result of the obligor's assignment of a third party's debt, those cash payments should not be given any less weight than cash payments received directly from the obligor. Crediting those payments toward the obligor's alimony arrearages does not result in a retroactive modification of the alimony award; the setoff merely acknowledges payments that the obligor has made to fulfill the requirements of the court order. Here, Cecile testified that she received $7,600 as a result of David's agreement with their daughter and the court's credit of that amount to David's alimony arrearages should therefore be upheld.