*1998 ME 48*

**Mary (Adams) DOW**

v.

**Stephen D. ADAMS.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 8, 1998.

Decided March 6, 1998.

Ray R. Pallas, Westbrook, for plaintiff.

Nicholas H. Walsh, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ and SAUFLEY, JJ.

CLIFFORD, Justice.

[¶ 1] Stephen D. Adams appeals from a judgment entered in the Superior Court (Cumberland County, *Calkins, J.*) affirming a District Court (Portland, *MacNichol, J.*) judgment denying his motion to amend the divorce judgment to terminate his alimony liability to Mary (Adams) Dow as of the date of Dow's remarriage. On appeal Adams contends that the District Court's enforcement of alimony was error, because it ignored an unmistakable injustice, incorrectly placed the burden of proof on him, and failed to apply the doctrines of laches and *res judicata.* Finding no error, we affirm.

[¶ 2] The parties married in 1966. They were divorced pursuant to a judgment of the District Court in February of 1979. By the terms of the decree, Adams was to pay alimony of $20 per week. Also pursuant to the decree, Dow executed a $12,000 promissory note to Adams payable upon the latter of the 18th birthday or the high school graduation of their youngest child. Dow remarried on June 28, 1980. It was at that time that Adams ceased making alimony payments.

[¶ 3] On May 14, 1991 Dow moved to enforce the original divorce decree, requesting $960 in alimony arrearages up to the date of her remarriage. Pursuant to a court order entered October 5, 1992, Dow "agree[d] to waive any entitlement she may have to *arrearages* in alimony payments under the parties' Divorce Judgment." (emphasis added). The divorce judgment stated that "in all other respects" the original decree "shall remain in full force and effect."

[¶ 4] On October 2, 1995 the $12,000 note became due. Dow refused to pay, and Adams brought a separate action in the District Court on the note. Dow counterclaimed in that action seeking an offset for alimony arrearages from the date of her remarriage in 1980. Adams also filed a motion in the District Court to amend the original divorce judgment to end Dow's right to receive alimony as of the date of her remarriage. The court effectively consolidated Adams's motion to amend the divorce decree and the suit and counterclaim on the note, making a complete disposition of the issues being litigated between the two parties.

[¶ 5] Between her remarriage in 1980 and 1995 Dow did not request alimony payments from Adams. She testified to having kidney problems at the time of her divorce, and continuing osteoporosis, preventing her from working even twenty hours per week. Her second husband earns $32,000 per year, and they have two children living at home.

[¶ 6] Adams introduced no evidence impeaching Dow's portrayal of her health or financial situation, nor any evidence as to his own financial situation or any reliance he might have had on Dow's non-enforcement of the alimony obligation. The court ruled that Dow waived alimony *arrearages* existing as of the October 5, 1992 court order, but that there had been no termination of her right to alimony from that date forward. The court further found that Dow's serious medical problems have remained ongoing since the divorce. The court entered judgment for Adams for the $12,000 note, and allowed Dow to offset $3,980 for the unpaid alimony. The Superior Court affirmed the judgment of the District Court, and this appeal by Adams followed.

I.

[¶ 7] The District Court concluded that remarriage does not terminate the award of alimony, and that while it had the authority to modify the award retroactively,

it was not required to do so.[1] Adams argues that the holding in *Bubar v. Plant*, 141 Me. 407, 410, 44 A.2d 732 (1945), that proof of remarriage establishes a *prima facie* case for alimony to cease, shifts the burden to Mrs. Dow to show "proof of some extraordinary circumstance justifying [alimony's] continuance." *Id.* He contends that the court therefore made an error of law by stating in its findings and conclusions that he failed to meet his burden of proof because he "chose not to testify" and that "the record is silent as to any hardship caused [to him] by the alimony payment."

[¶ 8] When the Superior Court acts as an *intermediate appellate tribunal*, we review the District Court's decision as though on initial appellate review. *See Cole v. Cole*, 561 A.2d 1018, 1019 (Me.1989) (cited in *Terison v. Terison*, 600 A.2d 1123, 1124 (Me.1992)). The District Court's findings of fact will be set aside only if they are clearly erroneous, and its judgment with respect to alimony and division of marital property will be affirmed unless "the court has violated some positive rule of law or has reached a result which is plainly and unmistakably an injustice." *Terison*, 600 A.2d at 1124.

[¶ 9] The alimony statute operative during the litigation of this matter authorized the court at any time to "alter or amend a decree for alimony . . . when it appears that justice requires it." 19 M.R.S.A. § 721(5) (Supp.1995). Section 721 further required that for any alteration or amendment "the court shall consider" the fifteen factors listed in section 721(1).[2] *See also Eastman v. Eastman–Veres*, 1997 ME 26, 690 A.2d 494, 496 (stating that 19 M.R.S.A. § 721 "provides the factors that the court must consider when determining whether a modification of alimony is appropriate.").

[¶ 10] The rule set forth in *Bubar* has been superseded by the statutory factors that the court must consider in awarding and modifying spousal support. See 19–A M.R.S.A. § 951 (1998). The fact of remarriage does not shift the burden to the remarried spouse to justify the continuation of alimony. *See Schultz v. Dellaire*, 678 A.2d 46, 47 (Me.1996) ("law is well established that one seeking the modification of an alimony award provided in a divorce judgment bears the burden of establishing the substantial change in circumstances justifying the modification"). While a court may and generally will determine that remarriage represents a substantial change in circumstances, the trial court must determine whether that change justifies modification in light of all other relevant facts. The court may continue the ali-

---

1. A case we decided after the litigation of the instant case in the District Court limits the ability of a court to retroactively modify or cancel an alimony arrearage. *See Roberts v. Roberts*, 1997 ME 138, ¶ 10, 697 A.2d 62, 65 (Me.1997) ("We note that nothing in 19 M.R.S.A. § 721 (Supp. 1996) authorizes modification or cancellation of an alimony arrearage by the retroactive application of a subsequent order."). Adams, however, was not seeking modification of an arrearage, but a ruling that no arrearage has existed since Dow's remarriage. Even if *Roberts* were controlling it would not bar Adams's motion.

2. Title 19 M.R.S.A. § 721 (Supp.1995), nearly identically to current 19–A M.R.S.A. § 951 (1998), provided in pertinent part:
   **1. Factors.** The court shall consider the following factors when determining an award of alimony:
     A. The length of the marriage;
     B. The ability of each party to pay;
     C. The age of each party;
     D. The employment history and employment potential of each party;
     E. The income history and income potential of each party;
     F. The education and training of each party;
     G. The provisions for retirement and health insurance benefits of each party;
     H. The tax consequences of the division of marital property, including the tax consequences of the sale of the marital home, if applicable;
     I. The health and disabilities of each party;
     J. The tax consequences of an alimony award;
     K. The contributions of either party as homemaker;
     L. The contributions of either party to the education or earning potential of the other party;
     M. Economic misconduct by either party resulting in the diminution of marital property or income;
     N. The standard of living of the parties during the marriage; and
     O. Any other factors the court considers appropriate.
   . . . .
   **5. Modification.** The court, at any time, may alter or amend a decree for alimony or specific sum when it appears that justice requires it, except that a court shall not increase the alimony if the original decree prohibits an increase. In making any alteration or amendment, the court shall consider the factors listed in subsection 1.

mony past remarriage when it deems it just to do so. 19 M.R.S.A. § 721(5).

[¶ 11] In the instant case, the District Court found that Adams chose not to testify and that the record was "silent" as to any hardship the alimony payments would cause him. It further accepted Dow's testimony of her "serious medical condition present since the divorce" and that due to osteoporosis she is able to work less than twenty hours per week as a domestic. Because the court's findings and conclusions show "a considered determination" of the statutory factors, *Raymond v. Raymond*, 447 A.2d 70, 71 (Me. 1982), the court had legal justification to continue the alimony despite her remarriage. The order was not "plainly and unmistakably an injustice." *Terison*, 600 A.2d at 1124.

## II.

[¶ 12] Adams next argues that laches defeats Dow's claim to post-remarriage alimony because she waited so long to assert the purported right, and that it was error for the District Court not to so conclude. Adams's claimed prejudice is that if Dow had raised the issue when she moved to enforce the divorce judgment in 1991, it would have been settled in 1992, efficiently and probably within the agreed order that resulted from the motion.

[¶ 13] Laches may be a defense in alimony cases. *Jacobs v. Jacobs*, 507 A.2d 596, 601 (Me.1986) ("alimony decrees are sufficiently equitable in character to warrant applying equitable principles such as laches to problems of enforcement") (quoting H. Clark, *Law of Domestic Relations* 14.10, at 470 (1968)). Laches may be a valid defense to the demand for arrearages of alimony, but only if the supporting spouse shows prejudice caused by the delay.[3] *See Dean v. Dean*, 665

So.2d 244, 249 (Fla.App.1995) (husband prejudiced by unimpeached testimony of large financial obligations that he would not have incurred had wife not delayed thirty years to seek child support arrearages); *Schafer v. Wegner*, 78 Wis.2d 127, 254 N.W.2d 193, 197–98 (1977) (husband prejudiced by delay because a witness died who would have been critical in wife's arrearage action); *Brown v. Brown*, 108 So.2d 492 (Fla.App.1959) (spouse who remarried and acquired children in reliance upon his wife's eleven years of not seeking alimony was prejudiced).[4]

[¶ 14] Adams neither articulates nor provides evidence of prejudice caused by the delay, which is required in order to invoke the doctrine of laches. Adams "has not shown that he undertook any obligation that he would have forsaken" due to Dow's delay in enforcing the obligation. *Carter v. Carter*, 611 A.2d 86, 87 (Me.1992) (no laches defense available to paying spouse despite wife's eleven-year delay in seeking child support, because "court's order merely required him to pay what he had owed for many years"); *Blisset v. Blisset*, 123 Ill.2d 161, 121 Ill.Dec. 931, 935, 526 N.E.2d 125, 129 (1988) (husband not prejudiced by paying lump sum after seven years as opposed to weekly payments). Adams's laches argument is unpersuasive.

## III.

[¶ 15] Finally, Adams contends that the October 10, 1992 order on Dow's 1991 motion to enforce for alimony arrearages presented Dow with the opportunity to protect her right to all *future* arrearages, but that since her motion only asked for pre-remarriage arrearages, principles of *res judicata* prevent her from raising her 1996 counterclaim to the post–1992 arrearages.

---

3. We have said:

   Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as the parties are in the same condition, it matters little whether one presses a right promptly or slowly.... [W]hen, knowing his rights, [the plaintiff] takes no steps to enforce them *until the condition of the other party has ... become so changed that he cannot be restored to his former state*, if the right be then enforced, delay becomes inequitable, and

operates as an estoppel against the assertion of the right.

   *Leathers v. Stewart*, 108 Me. 96, 79 A. 16 (1911).

4. *See also* Annotation, *Laches or acquiescence as defense, so as to bar recovery of arrearages of permanent alimony or child support*, 5 A.L.R.4th 1015 (1981 & Supp.1991); *cf.* Note, Rebecca Raskin, Fisco v. Department of Human Servs.: *The Inequity of Equitable Defenses in Child Support Arrearage Cases*, 48 Me.L.Rev. 154 (1996).

■ [¶ 16] The subsequent litigation of issues is barred by the claim preclusion prong of *res judicata* if: (1) the same parties or their privies are involved in both actions; (2) a valid and final judgment was entered in the prior action; and (3) the matters present for decision now were, or might have been, litigated in the prior action. *See Bezanson v. First Nat'l Bank of Boston,* 633 A.2d 75, 76 (Me.1993); *Machias Savings Bank v. Ramsdell,* 1997 ME 20 ¶ 11, 689 A.2d 595, 599 (res judicata includes claim preclusion and issue preclusion).

■ [¶ 17] It is true that, theoretically, the matters presented for decision now might have been litigated in Dow's 1991 motion to enforce the original divorce decree because the same "cause of action" was before the court in the prior case. *Currier v. Cyr,* 570 A.2d 1205, 1208 (Me.1990). The measure of a "cause of action" is the "aggregate of connected operative facts that can be handled together conveniently for purposes of trial." *Petit v. Key Bancshares of Maine, Inc.,* 635 A.2d 956, 959 (Me.1993).

[¶ 18] Although the matter could have been "conveniently" litigated in 1991, Dow had no motivation to request a ruling on post–1992 alimony because the order provided that "[i]n all other respects, the [original] Divorce Judgment in this matter ... shall remain in full force and effect." Because the decree remained unaltered with respect to the alimony obligation, Dow had no reason to believe that by waiving her right to *arrearages* she would compromise her right to *alimony.* Since she had no reason to litigate the issue of that right in 1991, her current claim is not precluded by *res judicata.*

The entry is:

Judgment affirmed.

