2000 ME 13

### Irene M. KETCHUM

v.

### Kenneth KETCHUM.

Supreme Judicial Court of Maine.

Submitted on Briefs Dec. 17, 1999.

Decided Jan. 27, 2000.

---

Martha J. Harris, Paine, Lynch & Harris, P.A., Bangor, for plaintiff.

Robert J. Ringer Jr., Daviau, Jabar & Batten, Waterville, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Irene Ketchum appeals from a judgment entered in the Superior Court (Somerset County, *Marsano, J.*) granting Kenneth Ketchum's motion for relief pursuant to M.R. Civ. P. 60(b)(5). Irene argues that the trial court erred when it concluded that Kenneth had satisfied his obligation to pay Irene's attorney fees related to their divorce. We affirm the judgment.

## I. BACKGROUND

[¶ 2] This is the third time Irene and Kenneth have been before us regarding the dissolution of their marriage. The Ketchums were divorced by a judgment of the Superior Court dated June 17, 1997. In that divorce judgment, the Superior Court divided the parties' marital property, ordered Kenneth to pay Irene $125 per week as spousal support, and ordered Kenneth to pay an additional $50 per week of spousal support "[i]n order to equalize the distribution of the marital assets." The court also ordered Kenneth to pay $2000 as a contribution toward Irene's attorney fees.

[¶ 3] Irene appealed the judgment. Because the $50 per week spousal support award was actually in the nature of a property distribution, we vacated the judgment and remanded it to the Superior Court. *See Ketchum v. Ketchum,* 1998 ME 62, ¶ 6, 707 A.2d 803, 805 (hereinafter "*Ketchum I* "). On remand, the Superior Court declined to conduct further evidentiary hearings, relying instead on the facts presented at the initial hearings. The re-

sulting amended divorce judgment did not vary from the first except in the method by which it addressed the property distribution. In the amended judgment, the court expressly found that the difference in the property distribution totalled $27,312. Concluding that an equal distribution was also an equitable distribution, the court ordered Kenneth to pay Irene "one-half of that difference, or $13,656. That sum, without interest, shall be paid within ninety (90) days after this judgment becomes final and if not paid within that period of time, shall bear interest thereafter at the post-judgment rate fixed by statute."

[¶ 4] Irene then appealed that judgment, arguing that the trial court erred in valuing the marital property and in refusing to hold an additional evidentiary hearing. We affirmed the amended divorce judgment. *See Ketchum v. Ketchum,* No. 98–176 (Me. Dec. 15, 1998) (mem.) (hereinafter "*Ketchum II* ").

[¶ 5] Shortly thereafter, a Writ of Execution was entered against Kenneth in the amount of $1000 in favor, not of Irene, but of one of her previous attorneys, on the basis of the outstanding judgment against Kenneth for contribution to Irene's attorney fees. Kenneth filed a motion pursuant to M.R. Civ. P. 60(b)(5) seeking relief from the writ, arguing that he had satisfied his entire obligation to contribute to Irene's attorney fees by paying the $2000 directly to Irene. Specifically, Kenneth argued that he satisfied both his obligation to pay attorney fees and his obligation to pay $13,565 in property settlement because he assigned his $12,000 bank account to Irene and paid her $50 per week from June of 1997 until January of 1999. These weekly payments totalled over $4000. In total, he asserted that he had paid her approximately $16,000, several hundred dollars more than the $15,565 to which she was entitled. Kenneth also argued that the attorney had no right to seek the writ

because Kenneth's obligation under the judgment ran only to Irene. The Superior Court granted the motion for relief, concluding that Kenneth's obligation was to Irene only and that he had fully satisfied his obligation to pay the attorney fees. This appeal followed.

## II. DISCUSSION

[¶ 6] Irene urges us to conclude that the court erred when it determined that Kenneth's weekly $50 payments to her accrued to satisfy his property distribution and attorney fees obligation. It is her position that the four thousand dollars paid to her over the course of approximately eighteen months was entirely "voluntary" and thus cannot be attributed to Kenneth's legal obligations under the divorce judgment. In pressing this argument, Irene relies on our analysis in *Roberts v. Roberts,* 1997 ME 138, 697 A.2d 62, where we held that it was error for the court to credit certain alternate payments made by the obligor against his responsibility under the divorce judgment to make monthly cash spousal support payments. *See id.* at ¶ 8, 697 A.2d at 64.

 [¶ 7] We review the trial court's action in ruling on a motion filed pursuant to Rule 60(b) for abuse of discretion. *See Madore v. Maine Land Use Regulation Comm'n,* 1998 ME 178, ¶ 15, 715 A.2d 157, 161–62. If the court has "correctly understood all material factors relevant to the exercise of its discretion, we will not disturb its decision unless the court has made a 'serious mistake' in weighing those factors." *Id.* at 162 (quoting *West Point–Pepperell, Inc. v. State Tax Assessor,* 1997 ME 58, ¶ 7, 691 A.2d 1211, 1213). Here the material factors relevant to the court's decision included the amount that Kenneth had paid to Irene and whether that amount could be credited against Kenneth's court-ordered obligations to Irene. Determination of the latter required the

court to examine the circumstances under which the payments were made.

[¶ 8] There are three distinct periods of time during which Kenneth made the $50 per week payments. First is the period following entry of the initial divorce judgment through the entry of the mandate after appeal in *Ketchum I* (June 16, 1997–March 5, 1998: $1900). Next is the time between the entry of the mandate and the entry of the amended divorce judgment (March 5, 1998–May 14, 1998: $500). Finally, there is the period between the entry of the amended divorce judgment and the date Kenneth stopped making the weekly payments (May 14, 1998–January 1999: $1650).

[¶ 9] When Kenneth began making those $50 payments, he did so pursuant to the first divorce judgment. The payments were ordered by the court "[i]n order to equalize the distribution of the marital assets of the parties." Because the court had labeled the payments "alimony," Kenneth was not relieved of the obligation to make the payments during the pendency of the first appeal. *See* M.R. Civ. P. 62(a) (judgment relating to separate support not stayed during pendency of appeal). Accordingly, not only were his payments not voluntary, Kenneth could have been subjected to enforcement proceedings *or a* contempt finding had he failed to make the payments. *See id.;* M.R. Civ. P 66(a)(2)(A)(ii).

[¶ 10] Similarly, in the final timeframe, that is, the period following the entry of the amended divorce judgment, Kenneth was again under a court order to pay a total of $13,656 to Irene. By continuing to make the $50 payments, he was acting in partial satisfaction of the amended judgment. Although the payments were not for spousal support and may not have been enforceable during the pendency of Irene's second appeal, they were made pursuant to an outstanding order of the court. To categorize such payments as "voluntary," as the term was used in *Roberts,* reflects a fundamental misapprehension of the concept addressed in *Roberts,* as addressed below. In addition, Irene's request that the trial court deny Kenneth credit for payments made during the pendency of her appeal runs entirely counter to the goal of encouraging parties in these situations to maintain the status quo notwithstanding the pendency of an appeal.

[¶ 11] Ultimately then, it was only during the brief interim period, after the entry of the mandate following our decision in *Ketchum I,* but before the entry of the amended judgment, that Kenneth's payments were not made pursuant to a specific order of the court.[1] Nonetheless we conclude that those payments were not "voluntary" as we used that term in *Roberts.*

[¶ 12] In *Roberts,* we addressed a situation where an obligor spouse failed to make spousal support payments of over $22,000.[2] *See Roberts,* 1997 ME 138, ¶ 5, 697 A.2d at 64. When faced with a contempt charge, the obligor argued that his true obligation had been reduced to under $10,000 because he had made several indirect payments.[3] *See id.* We concluded

---

1. Similarly, the spousal support obligation of $125 per week, included in the first judgment, was effectively vacated by action of the mandate in *Ketchum I.* Kenneth continued to make those payments nonetheless, thereby eliminating the need for Irene to seek an interim court order requiring spousal support or to be without spousal support pending hearing on remand.

2. Although required by the divorce judgment to make monthly payments in the amount of $400 to his ex-wife, Roberts had made only six payments over a course of almost six years. *See Roberts v. Roberts,* 1997 ME 138, ¶ 5, 697 A.2d 62, 64.

3. In addition to being ordered to pay spousal support, the obligor spouse was ordered to purchase a car valued at $5200 for the obligee spouse, to continue to cover the obligee

that because his payments were essentially unilateral modifications of the spousal support they were voluntary and thus could not be used as a credit against any spousal support owed. *See id.* at ¶¶ 7–12, 697 A.2d at 64–66. Our analysis there focused on the unilateral nature of the proffered alternative payments. Allowing an obligor spouse to determine, contrary to the express terms of the divorce judgment, how, when, and in what form a spousal support award will be satisfied would have the detrimental effect of interfering with the predictability of cash income available to support the obligee. The obligor's actions in *Roberts* were directly at odds with the court's order requiring periodic payments in cash for the support of the obligee.

[¶ 13] Kenneth's actions in the matter at bar are in sharp distinction to those of the obligor spouse in *Roberts* and do not implicate the policy concerns underpinning our opinion in *Roberts*. The obligor spouse's actions in *Roberts* left the obligee spouse without the "financial assurance" intended by the court order, thereby stripping the obligee spouse of the security of knowing that sum-certain periodic payments would be forthcoming. In contrast, Kenneth made consistent weekly cash payments under court orders in varying stages of finality and enforceability. These payments were not "voluntary" in the sense addressed in *Roberts*. The fact that Irene appealed both of the divorce judgments does not deprive Kenneth of credit for payments made pursuant to those judg-

ments during the pendency of the appeals.[4] Accordingly, the court did not err in determining that the payments made to Irene in $50 weekly increments should be applied against Kenneth's court-ordered obligations to her.

[¶ 14] Irene also argues that the court erred when it found that Kenneth had been ordered to pay Irene directly in contribution to her attorney fees, rather than the attorneys. We find no error in the court's conclusion on that issue or on its denial of attorney fees to Irene related to Kenneth's Rule 60(b) motion. Finally, not only were the court's findings and conclusions amply stated on the record, the court committed no error in declining to enter findings of fact and conclusions of law. *See* M.R. Civ. P. 52(a) ("Findings of fact and conclusions of law are unnecessary on decision of motions . . . .").

The entry is:

Judgment affirmed.

---

spouse on his insurance, and to loan $7600 to a daughter so that she could purchase the marital home. *See Roberts,* 1997 ME 138, ¶ 5, 697 A.2d at 64. The obligor spouse paid $7,413.75 for the obligee spouse's vehicle, and paid an additional $931.76 for her insurance. *See id.* He also assigned the $7600 note to the obligee spouse such that she would receive repayment from the daughter whenever payments were made.

4. The court also correctly concluded that the parties' tax treatment of the $50 payments, which may have created a "slight income tax problem" as a result of the label assigned to the payments in the first judgment, was not relevant on the issue of whether the payments would be credited to his obligation to pay attorney fees.