2002 ME 153

## DEPARTMENT OF HUMAN SERVICES

v.

## Jerome BLAISDELL.

Supreme Judicial Court of Maine.

Argued: May 7, 2002.

Decided: Sept. 20, 2002.

G. Steven Rowe, Attorney General, James A. McKenna, Asst. Attorney General (orally), Augusta, for plaintiff.

Stephen T. Hayes, (orally), Augusta, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] The Department of Human Services (DHS) appeals from the judgment of the District Court (Waterville, *Nivison, J.*) granting Jerome Blaisdell's motion for relief from judgment pursuant to M.R. Civ. P. 60(b)(6) and vacating a 1996 judgment that declared Blaisdell to be the father of Ryan F. and ordered Blaisdell to pay child support. Although DHS agrees that Blaisdell is not Ryan's biological father, it contends that the court abused its discretion in refusing to dismiss Blaisdell's motion as untimely, by ordering retroactive relief from the child support order, and by failing to consider Ryan's best interests. Because we conclude that Pamela F., the mother of Ryan F., should have received notice and opportunity to be heard on Blaisdell's motion, we vacate the judgment.

### I. BACKGROUND

[¶ 2] In 1996, DHS, on behalf of Pamela F., served a notice of paternity proceeding, pursuant to 19 M.R.S.A. § 521 (Pamph. 1996),[1] on Blaisdell. In the notice DHS alleged that Blaisdell was the father of Ryan, who was born in 1994, and that Blaisdell owed past child support to DHS. Blaisdell did not respond to the notice, and the court (*French, J.*) issued a judgment declaring him to be Ryan's father and ordering him to pay DHS $11,197 in child support arrearages and $32 weekly for ongoing child support.

---

1. Section 521 of Title 19 became 19–A M.R.S.A. § 1605 when Title 19 ·was recodi-fied. P.L.1995, ch. 694, §§ B–1, B–2 (effective October 1, 1997).

[¶ 3] In March 2001, Blaisdell filed a motion to modify the 1996 judgment and child support order and a motion for relief from judgment pursuant to M.R. Civ. P. 60(b)(6). He alleged that DNA tests demonstrated that he was not Ryan's biological father. Neither Blaisdell nor DHS served Pamela with a copy of the motion, and she did not appear at the hearing.

[¶ 4] The court granted Blaisdell interim relief by suspending his obligation to pay ongoing child support pending further order of the court. After hearing on the Rule 60(b) motion, the court found that Blaisdell and Pamela resided together from 1991 until 1999, and that Blaisdell believed that he had a monogamous relationship with Pamela. Their relationship ended in June 1999, and at that time Pamela told Blaisdell he was not Ryan's father. The statement shocked Blaisdell, and he did not believe it. As time passed, Blaisdell heard from others that Pamela had told them he was not Ryan's father. Because of the persistent rumors, Blaisdell decided to obtain DNA testing. The DNA test results demonstrated that Blaisdell is not Ryan's biological father, and DHS so stipulated.

[¶ 5] The court further found that, given the emotional nature of the allegation, it was understandable that Blaisdell did not believe Pamela when she first alleged that Ryan was not his son. The court concluded that it would not be reasonable to expect someone to act immediately upon such an allegation regarding a child that the person had raised from birth. The court found that Blaisdell's delay in seeking relief from the paternity judgment was reasonable and that the motion was brought within a reasonable time. The court vacated the 1996 judgment and child support order. DHS moved for reconsideration pursuant to M.R. Civ. P. 59. After hearing, the court denied the motion.[2]

## II. DISCUSSION

[¶ 6] This case raises serious and fundamental issues of the continuing responsibility of a man who has been declared the legal father of a child and who later learns that he is not the biological father. The case also requires consideration of the rights of the child, the child's mother, and DHS, the public agency that has furnished support for that child. Although declarations of paternity or nonpaternity have financial implications for the people involved, interests larger than finances are affected. The determination that a man is no longer the legal father of a child has a bearing on whether the man and the child will be permitted to have a relationship. The contact of the two with each other, the capacity of the man to share in the decisions concerning the child, and the financial obligations of the man toward the child, the child's mother, and the public agency are all affected when a court declares that the man is no longer the child's legal father.

[¶ 7] Neither the child's mother nor the child have been notified of this litigation, and the present parties do not purport to represent their interests. Indeed, by statute DHS and its lawyer can only represent the interests of DHS. 19–A M.R.S.A. § 2103(5) (1998). Because the child's mother has not been made a party, neither her rights and desires nor the interests of the child have been presented to the court.

---

**2.** In response to the argument of DHS that the vacation of the paternity judgment could be read to require DHS to repay to Blaisdell all child support that he has paid to DHS, the court stated that the issue of repayment had not been raised and that if Blaisdell intended to ask for repayment he would have to do so in a separate motion to which DHS could raise any defenses it may have.

Therefore, we must remand the case to the trial court so that Blaisdell's motion can be served upon Ryan's mother. The trial court may also wish to consider appointing a guardian ad litem for the child, depending on its determination of whether the mother can represent the child's interests or whether there may be a conflict between the child's interests and the mother's position in the litigation.

[¶ 8] In *Stitham v. Henderson,* 2001 ME 52, ¶¶ 12–13, 768 A.2d 598, 602, we held that the current husband of the mother of the child whose paternity was at issue could be declared the biological father even though the mother's former husband had been named the child's legal father in the divorce judgment. The *Stitham* case was filed in the Superior Court, and neither the mother nor the child were parties. *Id.* ¶¶ 4, 15, 768 A.2d at 600, 603. Although in that case we allowed the declaration of the current spouse's paternity, thereby declaring the nonpaternity of the former spouse, without either the mother or the child being a party, *id.* ¶¶ 12–13, 768 A.2d at 602, this case is distinguishable. The child's mother in *Stitham* was a party to a pending post-divorce proceeding in the District Court in which her former spouse was seeking to enforce contact with the child. *Id.* ¶ 17, 763 A.2d at 603. We stated that the District Court was the appropriate forum to determine whether it was in the best interest of the child for the former spouse, a de facto parent, to have a continuing role in the child's life. *Id.* Because of the pending proceeding in the District Court, to which the child's mother was a party, all of the issues attending the declaration of nonpaternity could be appropriately resolved. Thus, *Stitham* is distinguishable from the present case in which there are no pending proceedings involving the mother and Blaisdell.

The entry is:

Judgment vacated. Case remanded to District Court for further proceedings consistent with this opinion.