2004 ME 62

## DEPARTMENT OF HUMAN SERVICES o/b/o Pamela Flewelling

v.

## Jerome BLAISDELL.

Supreme Judicial Court of Maine.

Argued: March 10, 2004.

Decided: May 7, 2004.

G. Steven Rowe, Attorney General, James A. McKenna, Asst. Attorney Gener-

al (orally), Augusta, for Dept. of Human Services.

Pamela Flewelling, Waterville, for plaintiffs.

Stephen T. Hayes, Esq. (orally), Augusta, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD,* RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] The Department of Human Services appeals from a judgment of the District Court (Waterville, *Nivison, J.*) granting Jerome Blaisdell's motion for relief from a 1996 judgment adjudicating him to be the natural father of a minor child and requiring him to pay medical expenses and child support. Following genetic testing, the parties now agree that Blaisdell is not the child's father, but DHS contends that the court erred in relieving him of the substantial obligation that arose before he filed his Rule 60(b) motion. We agree and vacate the judgment.

## I. BACKGROUND

[¶ 2] Blaisdell and the child's mother lived together off and on from 1991 until 1999. Between 1993 and 1996 Blaisdell worked in northern Maine during the week, and returned home on weekends. The child was born during this period, and the District Court found that Blaisdell "was aware of the possibility that he was not [the child's] natural father" at the time of the birth.

[¶ 3] In the fall of 1996, Blaisdell signed papers acknowledging his paternity. Later that year, DHS commenced a paternity proceeding and informed Blaisdell that he could undergo genetic testing to confirm his status as the child's father. Blaisdell declined the testing. The District Court entered a judgment that: (1) adjudicated Blaisdell as the child's father; (2) ordered him to pay $32.00 a week in child support payments; and (3) adjudged Blaisdell liable for $11,197.25 in past medical and child support obligations.

[¶ 4] In the spring of 1999 the couple broke up, and Blaisdell began to hear rumors that he was not the child's father. In 2001 he had genetic testing done, which excluded him as the father.

[¶ 5] Blaisdell filed a motion for relief from the 1996 judgment pursuant to M.R. Civ. P. 60(b)(6). The District Court found that he was not the child's father and relieved him of all of his prior unpaid obligations. That judgment was appealed to this Court, and we remanded because neither the mother nor the child's interests were represented at the District Court hearing. *Dep't of Human Servs. v. Blaisdell*, 2002 ME 153, ¶ 8, 816 A.2d 55, 57.

[¶ 6] After a second hearing, at which both the mother and a guardian ad litem participated, the District Court reaffirmed its earlier judgment and this appeal followed.

## II. DISCUSSION

[¶ 7] We review a trial court's ruling on a Rule 60(b) motion for an abuse of discretion. *Ketchum v. Ketchum*, 2000 ME 13, ¶ 7, 743 A.2d 1270, 1272. To the extent that we consider issues of statutory interpretation, our review is de novo. *State v. McLaughlin*, 2002 ME 55, ¶ 5, 794 A.2d 69, 72.

---

* Although not available at oral argument, Justice Clifford participated in the development of this opinion. *See* M.R.App. P. 12(a) (stating that a "qualified justice may participate in a decision even though not present at oral argument").

[¶ 8] The parties agree that the District Court acted within its discretion in amending the 1996 judgment to indicate that Blaisdell is not the child's father, and in relieving him of his duty to pay child support from the day he filed his motion for relief forward. DHS contends, however, that the court erred in refusing to enforce the debts for which Blaisdell was responsible prior to filing his motion. Both the case law and child support statutes support DHS's position.

[¶ 9] Maine law provides that "[c]hild support orders may be modified retroactively but only from the date that notice of a petition for modification has been served upon the opposing party...." 19–A M.R.S.A. § 2009(2) (1998). We have relied on this statute in holding that "the District Court does not have the authority to retroactively alter [a father's] child support obligations that accumulated prior to his motion for relief from the divorce judgment ...." *Beck v. Beck*, 1999 ME 110, ¶ 8, 733 A.2d 981, 984.

[¶ 10] Recently, we decided a case with facts similar to those at bar. In *Bouchard v. Frost*, 2004 ME 9, ¶ 16, 840 A.2d 109, 113, we determined that a man who paid child support for twelve years before genetic testing was not entitled to restitution. Again, we relied on section 2009(2) in holding that the "courts lack the authority to retroactively alter child support obligations." *Id.* ¶ 15, 840 A.2d at 113. Although the parties agree that if Blaisdell had paid his child support on time the court could not order reimbursement, Blaisdell claims that because he has *failed* to make those payments he is entitled to equitable relief from prospective enforcement of the 1996 judgment. He argues that the District Court's judgment does not, in fact, provide retroactive relief, but instead relieves him of the duty to make future payments pursuant to an order that no longer has a valid legal basis.

[¶ 11] While we have recognized that Rule 60(b) grants the trial court significant latitude in the exercise of its equitable powers, we have also held that the right to a child support payment vests when that payment becomes due. *Tapman v. Tapman*, 544 A.2d 1265, 1268 (Me.1988). Other states have taken the same approach. *E.g., Ferguson v. Dep't of Revenue*, 977 P.2d 95, 100 (Alaska 1999); *Littles v. Flemings*, 333 Ark. 476, 970 S.W.2d 259, 264 (1998). Thus, DHS has a vested right to the overdue payments, and the results of the recent genetic testing do not undermine the legality of those earlier judgments, which were based on the fact that Blaisdell freely acknowledged paternity.

The entry is:

Judgment vacated and remanded to the District Court for further proceedings consistent with this opinion.