609 P.2d 579

Rafaela LOPEZ, now known as Rafaela (Lopez) Astorga, Plaintiff/Respondent/Appellant,

v.

Guadalupe Frank LOPEZ, Jr., Personal Representative of the Estate of Guadalupe Frank Lopez, deceased, Defendant/Petitioner/Appellee.

No. 2 CA–CIV 3304.

Court of Appeals of Arizona, Division 2.

Jan. 14, 1980.

Rehearing Denied March 12, 1980.

Review Denied April 15, 1980.

Mary Anne Peters, Tucson, for plaintiff/respondent/appellant.

Jacqueline Schneider, Tucson, for defendant/petitioner/appellee.

## OPINION

HOWARD, Judge.

This is an appeal from an order denying appellant's claim for arrearages of support money. In 1967 a decree of separation awarded custody of the minor children to the wife and ordered the husband to pay to her for her support and the support of the minor children "50% of his net income each week". The husband was 67 years old at the time of this decree and employed as a construction worker.

In 1978 the wife filed a petition for dissolution and a petition for arrearages. The trial court granted the dissolution but failed to award any sum for arrearages. We agree with her contention that the trial court erred in not granting her a judgment for arrearages.

■ The issues in the trial court were (1) What was the husband's net income during the periods in question? and (2) What amount did the husband pay toward those arrearages? In resolving the second issue it must be kept in mind that in an action for arrearages the burden of showing payment rests on the husband. *Briggs v. Briggs*, 178 Or. 193, 165 P.2d 772 (1946); *Marks v. Marks*, 98 Utah 400, 100 P.2d 207 (1940).

■ What does the phrase "net income" include? The general rules of construction of a written instrument apply to the construction of judgments. The intention of the court must be determined from all parts of the judgment and words and clauses should be construed according to their natural and legal import. *Keiser v. Wiedmer*, 283 S.W.2d 914 (Mo.App.1955); 49 C.J.S. Judgments § 436. The purpose of the provision in the decree of separation was to provide for the needs of the wife and the minor children. Webster's Third New International Dictionary defines "income" as "a gain or recurrent benefit that is [usually] measured in money and for a given period of time, derives from capital, labor, or a combination of both . . . ." The same work defines "net income" as the balance of gross income remaining after deducting related costs and expenses. We believe that here the court intended that the term "net income", as applied to the husband's payroll checks, meant gross pay less mandatory deductions and all net sums which he received including unemployment benefits, a substitute for wages, but not workman's compensation benefits which were received for an on-the-job injury.

■ The big dispute between the parties concerns the nature of certain Social Security payments. In 1971 the husband, who was then 72 years old, began receiving Social Security benefits. The wife also started receiving a Social Security check every month as the spouse of an individual entitled to old-age benefits pursuant to 42 U.S.C.A. Sec. 402(b)(2) (1974). She also started receiving a check for the minor children who became eligible through their father under 42 U.S.C.A. Sec. 402(d)(2) (1974). First of all, we reject the husband's contention that the Social Security payments which he actually received were not "net

income". We believe it clear that the court intended him to pay for the support of his family a sum equal to one-half of the money that he actually received. Second, we reject the wife's contention that the Social Security payments paid to her for herself and the minor children should have been included in computing the husband's income. He never actually received the money nor did he have a right to do so. This leads us to the next question. Are the Social Security payments received by the wife and the children to be credited against his support obligation? We answer this in the affirmative. See *Cash v. Cash*, 234 Ark. 603, 353 S.W.2d 348 (1962); *McClaskey v. McClaskey*, 543 S.W.2d 832 (Mo.App.1976). See also Annot., 77 A.L.R.3d 1315 (1970); 24 Am.Jur.2d Divorce and Separation Sec. 873 (1966).

■ The husband also claims credit for medical and dental payments for the children and wife which were made through his own insurance directly to the creditors. Ordinarily, the husband cannot be credited for support payments made other than to his wife, not consented to by her, and as to which he is a volunteer. See *Baures v. Baures*, 13 Ariz.App. 515, 478 P.2d 130 (1970); Annot. 47 A.L.R.3d 1024 (1971). This rule is subject to an equitable exception under the particular circumstances involved, provided such an allowance would not do an injustice to the mother. *Cole v. Cole*, 101 Ariz. 382, 420 P.2d 167 (1966), *Badertscher v. Badertscher*, 10 Ariz.App. 501, 460 P.2d 37 (1969). Child support[1] is to be disbursed by the wife *as she sees fit* and the husband is not entitled to credits against past due child support for monies he paid to dentists or doctors on his own accord. *McConnell v. Theriot*, 295 So.2d 60 (La.App.1974). However, if the husband can show that the wife expressly or impliedly consented to the manner in which the husband took care of their medical needs, the trial court should credit such

payments against arrearages. see *Goeller v. Goeller*, 346 S.W.2d 545 (Mo.App.1961).[2]

■ The husband claims a set-off for one-half of the payment he made on a lot which he purchased in the name of himself and his wife. This sum clearly cannot be set off against his support obligations absent an agreement on the part of his wife. The husband also claims a credit in an unknown amount because of a joint checking account which was in existence. There was no evidence that the wife drew any funds from this account.

The evidence shows that on occasion the husband stayed at the family home. His son testified that when his father was staying at the house and working, he would give $100 a week to his wife. The wife testified he gave her, at times $40 to $100. She admitted that in 1975 her husband paid her $300. Although the burden of proof of payment was on the husband, there was no effort in the trial court to link when he was staying at home to those time periods when he was working so as to bring into play the son's testimony.

■ From the undisputed testimony below and exhibits, it is clear that there are arrearages. The only fair thing to do in this case is to remand it for a new trial. One more point must be discussed and that is the allocation of support payments made through Social Security or otherwise. The husband was to begin making payments in 1967. The petition was filed in 1978. Unpaid installments of support, maturing more than five years before the filing of a petition to enforce support, are barred unless they are renewed in accordance with A.R.S. Sec. 12–1551. See *Chudzinski v. Chudzinski*, 26 Ariz.App. 130, 546 P.2d 1139 (1976). Such was not the case here. But this rule does not resolve the allocation of payments made during the five-year period preceding the filing of the petition. Since neither the husband or the wife allocated

1. We also include the wife's support in the term "child support" as it is used herein.

2. In *Goeller*, the court refused to allow a set-off because the only reason the wife took the children to the husband when they needed clothing and medical care was because he was not paying the support payments as he was supposed to do.

the payments here, the law will do so and apply the payments to the oldest debt. *Chudzinski v. Chudzinski,* supra.

Reversed and remanded for new trial.

HATHAWAY, C. J., and RICHMOND, J., concur.