805 P.2d 401

**In the Matter of the ESTATE OF Roy C. PATTERSON, Deceased.**

**Billie J. SHAW, Creditor–Appellant,**

v.

**Rovena QUAINTANCE, Personal Representative–Appellee.**

**No. 1 CA–CV 89–341.**

Court of Appeals of Arizona, Division 1, Department C.

Jan. 29, 1991.

---

Law Office of Charles L. Arnold, P.C. by Charles L. Arnold, Phoenix, for creditor-appellant.

Robert Mothershead, P.C. by Robert C. Mothershead and Dan Saint, Phoenix, for personal representative-appellee.

## OPINION

JACOBSON, Judge.

The primary issue in this appeal is whether a custodial mother's claim for child support arrearages against the estate of her deceased former spouse should be offset by the amount of social security and veteran's benefits the mother received on behalf of the children during decedent's lifetime.

Appellant, Billie J. Shaw (creditor), appeals from the trial court's order granting summary judgment in favor of appellee, Rovena Quaintance (personal representative), thereby denying the creditor's claim against the estate of her former spouse, Roy Patterson (decedent), for unpaid child support. The trial court also awarded attorneys' fees to the personal representative pursuant to A.R.S. § 12–341.01. We reverse and remand based on our finding that the undisputed facts do not support, as a matter of law, the estate's entitlement to a credit for the federal benefits received by the creditor against the decedent's liability for child support arrearages.

## FACTUAL AND PROCEDURAL BACKGROUND

The decedent and the creditor were divorced on October 5, 1970. Custody of the couple's three minor children was granted to the creditor. At the time of the divorce, decedent was totally disabled, and his income consisted only of federal disability benefits and state retirement income. The divorce decree ordered decedent to pay child support as follows:

Based upon [decedent's] monthly payments from the Veteran's Administration of $1,068.00 plus Arizona Teachers Retirement payments and Social Security payments, [decedent] is ordered to pay to [the creditor], through the Clerk of the Maricopa County Superior Court, the sum of $450.00 per month as and for child support, such sum being comprised of child support payment in the amount of $150.00 per month for each of the three children of this marriage, which $150.00 payment is to continue until the death or emancipation of each such child, ... payable on or before the first of each month, commencing September 1, 1970.

The parties do not dispute that decedent did not make any support payments after November 1, 1970.

On July 9, 1971, decedent, through his then wife, Beatrice Patterson, filed a "Statement in Support of Claim" with the Veteran's Administration (V.A.), advising it of his court-ordered child support obligation, and requesting, "we would very much like for you to make the apportionment of my husbands [sic] benefits to his children directley [sic] to his ex-wife ... [t]he sum of $450.00 ... so as we don't want to be behind payment to the children." Nothing in the record indicates whether this claim was approved, or whether decedent's personal veteran's disability benefits were reduced as a result of such an apportionment. Nor does the record indicate whether the benefits decedent was receiving from V.A. or social security at the time of the decree included any amount attributable to his having three children.

The record does reveal that on November 1, 1971, the creditor began receiving V.A. benefits on behalf of the children as a result of decedent's disability, with a monthly allotment for each child which varied over the years and which terminated as each child turned eighteen.[1] She also received social security benefits on behalf of the children as a result of decedent's disability; however, the record does not establish when these payments began, their exact amounts, or the reason the payments were forthcoming.[2]

---

1. The children were born on November 5, 1955, May 6, 1958, and March 8, 1967; they reached age eighteen on November 5, 1973, May 5, 1976, and March 8, 1985, respectively. The record indicates that the creditor received the following V.A. benefits over the following time periods:

| Dates | Monthly Amount | Totals |
|---|---|---|
| 7/1/71 to 7/31/71 | $300.00 | $ 300.00 |
| 8/1/71 to 5/31/72 | 450.00 | 4,500.00 |
| 6/1/72 to 11/4/73 | 300.00 | 5,100.00 |
| 11/5/73 to 5/5/76 | 200.00 | 6,000.00 |
| 5/6/76 to 4/30/84 | 100.00 | 9,500.00 |
| 5/1/84 to 3/7/85 | 300.00 | 3,000.00 |
| Total V.A. Benefits: | | $28,400.00 |

2. The creditor estimated in her deposition that the social security payments were approximately $50.00 per month per child. The personal representative alleged that the creditor received the following social security payments on behalf of the children:

| Amount | Number of Months | Totals |
|---|---|---|
| $150.00 | 1 | $ 150.00 |
| $150.00 | 10 | 1,500.00 |
| $150.00 | 17 | 2,550.00 |
| $100.00 | 30 | 3,000.00 |
| $ 50.00 | 95 | 4,750.00 |
| $ 50.00 | 10 | 500.00 |
| Total Social Security Benefits | | $12,450.00 |

After decedent died on April 9, 1987, the personal representative was appointed. On September 28, 1987, the creditor filed a claim against the estate for the unpaid child support, plus interest, accrued from November 1, 1970, to March 8, 1985, the date the youngest child turned eighteen.[3] The creditor claimed the following amounts were due:

| Child support | |
|---|---|
| 11/1/70 to 3/8/85 | $39,300.00 |
| Interest at 6% | |
| 11/1/70 to 12/31/79 | 10,350.75 |
| Interest at 10% | |
| 1/1/80 to 4/9/87 | 26,200.65 |
| Total: | $75,851.40 |

After the personal representative disallowed the claim, the creditor petitioned the court for relief. *See generally* A.R.S. § 14–3806. The personal representative moved for summary judgment, arguing that any child support decedent owed the creditor should be offset by the federal disability benefits that were paid to the creditor on behalf of the children. The trial court granted summary judgment in favor of the personal representative and awarded the estate its attorneys' fees of $14,470.30. The creditor timely appealed.

## DISCUSSION

Rule 56(c), Arizona Rules of Civil Procedure, allows summary judgment only "if the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." No disputed facts exist in this case; rather, the dispute involves an issue of law because of the absence of facts. Therefore, we are required to make an independent determination whether, on the basis of the record presented to the trial court, summary judgment was appropriate. *Arizona Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Trust Fund v. Hatco, Inc.,* 142 Ariz. 364, 368, 690 P.2d 83, 87 (App.1984).

### A. Absence of Modification Proceedings

■ The creditor first argues that, by granting summary judgment, thereby allowing the estate to credit the disability benefits received by the creditor on behalf of the children against decedent's support obligation, the trial court in effect allowed a retroactive modification of the decree. We agree.

Arizona recognizes the rule that child support orders may not be altered retroactively. *Lamb v. Superior Court,* 127 Ariz. 400, 402, 621 P.2d 906, 908 (1980); *Hatch v. Hatch,* 113 Ariz. 130, 134, 547 P.2d 1044, 1048 (1976). The restrictions imposed upon modifications of child support orders are as follows:

A. Except as otherwise provided ... the provisions of any decree respecting maintenance or support may be modified only as to installments accruing subsequent to notice of the motion for modification to the opposing party and only upon a showing of changed circumstances which are substantial and continuing ....

A.R.S. § 25–327(A).

The personal representative does not dispute that decedent never initiated any proceedings to modify his divorce decree, or that decedent allowed the decree ordering him to pay $150.00 per child per month to remain in force against him even after the

---

There is no documentation supporting the personal representative's figures.

**3.** A parent may file an action to collect child support arrearages within three years after the emancipation of the youngest of all the children who were the subject of the court order to pay such support, without a bar to the establishment of a judgment for all of the arrearages for the entire minority of all the children. A.R.S. § 12–2453(E). The death of the spouse ordered to pay support does not terminate the obligation, which may then be pursued as a creditor's claim against the estate, having priority equal to claims provided for in A.R.S. § 14–3805(A)(6). A.R.S. § 25–327(C). Therefore, although all the children had reached the age of majority by March 8, 1985, prior to decedent's death on April 9, 1987, the creditor's claim for arrearages, filed on September 28, 1987, was within the time period in which to bring such a claim. *See* A.R.S. § 12–2453(E).

creditor began receiving the children's benefits.[4] The credit his estate now seeks would, in effect, require a judicial determination that the federal disability payments on behalf of the children released him from any additional support obligation, retroactive to November 1, 1970.

■ In the absence of a court order modifying the decree, a custodial parent's receipt of federal benefits on behalf of the children should not *automatically* reduce the amount of the noncustodial parent's court-ordered child support obligation. We agree with those jurisdictions that have held, as a general rule, that a noncustodial parent may not reduce or eliminate his child support obligation because of federal benefits paid to the custodial parent without requesting that the court modify the decree. *See, e.g., Chase v. Chase,* 74 Wash.2d 253, 444 P.2d 145, 149 (1968); *Guthmiller v. Guthmiller,* 448 N.W.2d 643 (N.D.1989); *Burnham v. Burnham,* 743 S.W.2d 568 (Mo.App.1987). This rule is supported by the public policy that requires courts, and not the parties, to fix the amount of child support. *See Hepton v. Hepton,* 25 Wash.App. 229, 605 P.2d 1288, 1289 (1980); *accord Craver v. Craver,* 649 S.W.2d 440, 445 (Mo.1983). We therefore hold that decedent was not entitled as a matter of law to an automatic credit against the child support arrearages. Whether such a credit is factually available will next be explored.

### B. Equitable Considerations

Although applying a credit to child support arrearages in the absence of modification proceedings is not allowed as a matter of law, we realize that equitable considerations may justify a court allowing an offset against a past support obligation. For example, the Arizona Supreme Court has refused to allow an ex-wife to collect court-ordered child support from her ex-husband for a time period in which he had physical custody of the child. *Cole v. Cole,* 101 Ariz. 382, 420 P.2d 167 (1966). The *Cole* court disallowed the claim even though the child support order was not modified after the husband obtained custody of the child. The court noted that the spirit of the decree had been complied with, and acknowledged that "[i]t would certainly be inequitable to allow [the ex-wife] to collect money for support of a child during the time [the ex-husband] was actually supporting him." *Id.* at 384, 420 P.2d at 169.

In an earlier case, the supreme court refused to allow a mother to collect past-due support payments for a period of time in which her minor daughter was married and no longer in her custody, although the decree had not been modified to terminate the father's obligation to pay support until the child's majority. *Crook v. Crook,* 80 Ariz. 275, 296 P.2d 951 (1956). The court reasoned:

> The equities of natural justice in a given situation may turn a court of conscience away from the cold realm of technical legalism, whereby the court will not allow the prima facie wording of its decree to defeat the justice and propriety of an exemption from the duty therein imposed.

*Id.* at 278, 296 P.2d at 952–53. We thus address the question "whether it is fair and just that the support obligor be given credit for these benefits." *See Children & Youth Servs. v. Chorgo,* 341 Pa.Super. 512, 491 A.2d 1374, 1377 (1985). In an attempt to examine the equitable considerations, we first look to the different rationales adopted by other courts that have addressed the question whether receipt of federal benefits will reduce a child support obligation. *See generally* Annotation,

---

**4.** The personal representative does argue that, because decedent's physical disability did not change after the decree, no "changed circumstances" would have supported a modification of child support. However, the relevant change in circumstance that might have induced the court to reduce decedent's monthly support payments was the children's receipt of federal benefits they apparently were not receiving at the time the decree was entered. We cannot, of course, determine from this record whether such a modification would have been approved if requested, because we do not know all the economic circumstances of the parties at that time, which the trial court would have considered when ruling on a petition to modify child support. *See generally* A.R.S. § 25–320(A).

*Right to Credit on Child Support for Social Security or Other Government Dependency Payments Made for Benefit of Child*, 77 A.L.R.3d 1315 (1977).

Some courts have allowed a credit based on the "earned" character of such federal benefits. These courts have reasoned that such a credit is equitable because the benefits were earned during employment by the parent obligated to pay support, and, in effect, constitute the payments received on an insurance policy, the premiums for which were paid by the parent for the children as beneficiaries. *See Guthmiller, supra; Andler v. Andler*, 217 Kan. 538, 538 P.2d 649 (1975); *Horton v. Horton*, 219 Ga. 177, 132 S.E.2d 200 (1963); *Mooneyham v. Mooneyham*, 420 So.2d 1072 (Miss. 1982); *Cash v. Cash*, 234 Ark. 603, 353 S.W.2d 348 (1962); *Mask v. Mask*, 95 N.M. 229, 620 P.2d 883 (1980). Accordingly, crediting the benefits against the obligor's child support obligation is fair because the benefits are the fruits of the obligor's labors.

Other courts have permitted a credit on the ground that the federal benefits received on behalf of the children are merely a substitute for the wages the obligor would have received but for the disability or the retirement and from which the support payments would otherwise have been made. *Davis v. Davis*, 141 Vt. 398, 449 A.2d 947 (1982); *Binns v. Maddox*, 57 Ala. App. 230, 327 So.2d 726 (1976).

Still other courts have refused to permit a disabled or retired noncustodial parent to receive credit against child support obligations for social security and V.A. benefits received by the children from that parent's account. *See, e.g., Craver, supra; Nibs v. Nibs*, 625 P.2d 1256 (Okl.1981); *Fuller v. Fuller*, 49 Ohio App.2d 223, 360 N.E.2d 357 (1976). The rationale for the refusal is the recognition that, from the point of view of the children, the children would be entitled to these benefits as a matter of law whether or not the parents are divorced. *See, e.g.,* 42 U.S.C. § 402(d)(1) (social security benefits); *Rose v. Rose*, 481 U.S. 619, 630–31, 107 S.Ct. 2029, 2036, 95 L.Ed.2d 599 (1987) (noting that Congress intended veteran's disability benefits to be used in part for the support of a veteran's dependents). Allowing such payments to be credited against child support arrearages would be "in effect, ordering the children to pay the accrued arrearages for their own support." *Fuller*, 360 N.E.2d at 358.

In analyzing these approaches, we reject the "earned benefits" and "substitute for wages" theories that allow a credit as a matter of law. First, if the disability benefits decedent was receiving at the time of the divorce were "earned," or "wages," the trial court already took that equitable factor into consideration in ordering support payments from that income. This factor distinguishes this case from *Lopez v. Lopez*, 125 Ariz. 309, 609 P.2d 579 (App. 1980), on which the personal representative relies. In *Lopez*, Division Two of this court allowed social security payments received by the mother and children related to the father's retirement to be credited against the father's support obligation after the father retired and became eligible for such benefits four years after the initial support order was issued. The trial court had ordered the father to pay "50% of his net income" in support. Although Division Two found that the payments made directly to the custodial mother were not part of the father's "income," the court allowed those payments to be credited against his arrearages. *Id.* at 311, 609 P.2d at 581. In this case, however, decedent was already disabled and receiving benefits at the time of the support order; the court ordered him to pay a specified amount in support out of the income that those benefits represented.

■ If, however, decedent's income from his personal disability benefits decreased in proportion to the benefits that the creditor later received on behalf of the children, then equity might allow an offset. There is no difference between having a third party satisfy an obligation owed the decedent by paying that obligation to the decedent's creditor and having the decedent pay the creditor directly. However, if decedent's income remained unchanged when

the creditor started receiving the children's benefits, then the children's benefits were not a substitute for "lost" income and cannot equitably be considered as fulfilling the court order that decedent pay $450.00 per month from his disability income toward the children's support. We thus agree with those courts that have rejected crediting the noncustodial parent for benefits the children would have been entitled to receive regardless of the divorce and that do not decrease the noncustodial parent's own income.

■ The problem in this case is that we cannot tell, as a matter of law, which of the above circumstances occurred here. Under federal law, the recipient of veteran's disability benefits may have part of his compensation apportioned if his children are not in his custody. *See* 38 U.S.C. § 3107(a)(2). The Administrator is authorized to approve such apportionment if "the veteran is not reasonably discharging his or her responsibility for the ... children's support." 38 C.F.R. § 3.450(a)(1)(ii). Presumably, such an apportionment to the children would reduce the noncustodial veteran's benefit proportionately. Indeed, the deposition testimony of Sandra H. Thompson, a supervisor for the V.A. regional office, would support such a reduction:

Q If the veteran is found to be 100 percent disabled, how is the amount of his benefit calculated?

A It's set by law. He is entitled to a certain amount in his own right, and then he can receive additional benefits for any established dependents that he might have.

Q Say a 100 percent disabled veteran has children, and he is receiving benefits for both himself and the dependent children. Is the portion of the benefits that's paid for him to the dependent considered his benefit?

A Yes.

\*　　\*　　\*　　\*　　\*　　\*

Q Given the situation where the veteran has children from a prior marriage who are living with the ex-wife, what is the process that the ex-wife and/or the [V.A.] goes through to determine what portion of the benefits is apportionable?

A First of all, they have to file a claim.... It is necessary that need be shown. We send out certain forms which basically get financial information. What are your resources, what are your expenses. When all of that information is received, we then evaluate it and determine if need is actually shown on the part of those who are actually claiming the apportionment *and whether or not the apportionment would cause an undue hardship on the veteran.*

(Emphasis added.)

If such a procedure were followed here, and the estate had established that decedent's disability income had been reduced by the amount of the apportionment of benefits paid to the creditor on the children's behalf, then the estate would have made an equitable argument that decedent satisfied his support obligation by transferring the V.A.'s obligation to support him to his children. However, the undisputed facts in the record do not support such a theory. Indeed, further testimony by the V.A. supervisor would support a theory that the benefits paid to the creditor were not considered child support to be deducted from decedent's personal benefits:

Q In evaluating the need, is the [V.A.] guided or controlled by any prior court orders by the state courts for child support to be paid by the veteran?

A No, we're not.

Q If the veteran is, in fact, paying child support, is it possible that the [V.A.] might still make an apportionment of benefits if need is established?

A Yes.

\*　　\*　　\*　　\*　　\*　　\*

Q Are apportionment benefits paid to an ex-wife claimant for the dependent children considered by the [V.A.] to be child support?

A No.

Q And, in fact, your determination of apportionment is totally independent from any child support obligation the veteran may or may not have under law?

A Yes. The only thing is we would consider in our finding of need on the part of the apportionee, we would consider how much the veteran is already contributing. But if need were still shown, we could apportion an additional amount.

The only evidence the personal representative provided in support of her motion for summary judgment on this issue was a copy of the claim form filed by decedent's wife requesting an apportionment in 1971, and a statement of the benefits actually paid by the V.A. to the creditor. The record contains no evidence that the apportionment claim was granted and that as a result the V.A. paid the creditor directly for decedent's support obligation, thus reducing decedent's income by the amount paid on the children's behalf.

Furthermore, we note that federal law would also allow decedent's children, in their own right, to receive veteran's benefits based on the veteran's disability, without reducing the veteran's income. Under 38 U.S.C. § 335, any veteran entitled to compensation for a total disability is entitled to *additional* monthly compensation for dependents as provided in section 315 of this title." (Emphasis added.) Section 315 currently provides:

> Any veteran entitled to compensation at the rates provided in section 314 of this title, and whose disability is rated not less than 30 percent shall be entitled to *additional* compensation for dependents in the following monthly amounts:
>
> (1) If and while rated totally disabled and
>
> . . . .
>
> (C) has no spouse but one or more children, $64 plus $48 for each child in excess of one.... [5]

38 U.S.C. § 315. We note that the United States Supreme Court has pointed out that "the paucity of the benefits available under § 315 belies any contention that Congress intended these amounts alone to provide for the support of the children of disabled veterans." *Rose*, 481 U.S. at 630–31, 107 S.Ct. at 2036. Likewise, we believe that, if the creditor was receiving benefits for the children to which they were statutorily entitled under § 335, then those amounts should not equitably be credited to decedent's support arrearages. If decedent had wanted a reduction in the child support order because the children's benefits had increased under § 335, he should have petitioned for a modification based on that changed circumstance.

Additionally, we note that the personal representative also claimed a credit for court-ordered special allowances paid to the creditor by the V.A. for certain medical and dental expenses of the children, totalling $18,775.66. These payments generally are not credited against a support arrearage. *See Lopez*, 125 Ariz. at 311, 609 P.2d at 581. Additionally, they may not be equitably credited if they result from an increase in benefits that decedent would not have otherwise received, and were not the result of a voluntary payment by him toward the children's expenses. *Smith v. Smith*, 133 Ariz. 384, 385, 651 P.2d 1209, 1210 (App. 1982). These payments apparently were benefits to which the children would have been entitled regardless of the amount of support owed or received or the marital status of their parents.

The record is even more barren regarding the social security benefits the creditor received on behalf of the children due to decedent's disability. The personal representative has not established when those payments started, if they reduced decedent's income from that which he was receiving at the time of the decree, how long they continued, or the total amount of the credit to be applied to support arrearages.

In summary, we are unable to determine from the undisputed facts in this record whether the estate would be equitably entitled to a credit of federal benefits paid on the children's behalf against the creditor's claim for child support arrearages. Because the record does not support such a credit, we reverse the trial court's order granting summary judgment in favor of the estate, and remand for further proceed-

---

**5.** The entitlement amounts available under section 315 have varied during the time periods involved here. The current version is quoted only for illustrative purposes.

ings. We note that, because the creditor has established the existence of decedent's legal obligation to pay child support and because it is undisputed that he never paid such support as ordered pursuant to the divorce decree, the burden on remand will be on the estate to show entitlement of an equitable credit of federal benefits against the arrearage by establishing that decedent's income was reduced in proportion to those benefits. *See Lopez,* 125 Ariz. at 310, 609 P.2d at 580 (in action for child support arrearages, burden is on obligor to show payment).

### C. Attorneys' Fees

Because we reverse the order granting summary judgment, we also reverse the award of attorneys' fees to the estate. We therefore need not determine whether those fees were properly awarded pursuant to A.R.S. § 12–341.01. Because the issue may arise again on remand, however, we note that the trial court apparently awarded such fees based on its impression that, because a property settlement was involved in the divorce decree, this action was one arising out of contract. The creditor correctly points out on appeal that no property settlement agreement was entered into between these parties, and that the divorce decree therefore does not provide a "contractual" basis to award attorneys' fees.

Reversed and remanded for further proceedings consistent with this opinion.

SHELLEY, P.J., and GERBER, J., concur.