NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

_____

*In re the Matter of:*

EUGENE ANAYA, *Petitioner/Appellant,*

*v.*

SANDRA L. ANAYA, *Respondent/Appellee.*

No. 1 CA-CV 13-0606
FILED 06-05-2014

_____

Appeal from the Superior Court in Apache County
No. S0100DO201000157
The Honorable Kay H. Wilkins, Judge *Pro Tempore*

**AFFIRMED AS MODIFIED**

_____

COUNSEL

Hamblin Law Office, P.L.C., Eagar
By Bryce M. Hamblin
*Counsel for Petitioner/Appellant*

R. John Lee, Attorney at Law, St. Johns
By R. John Lee
*Counsel for Respondent/Appellee*

_____

## MEMORANDUM DECISION

Presiding Judge Patricia K. Norris delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

_____

**N O R R I S**, Judge:

¶1　　　　Eugene Anaya appeals from the superior court's order finding the consent decree that dissolved his marriage to Sandra L. Anaya ambiguous and ordering him to pay Sandra spousal maintenance of $1,089.59 per month.  For the following reasons, we affirm the order as modified.

## FACTS AND PROCEDURAL BACKGROUND

¶2　　　　The superior court dissolved Eugene and Sandra's marriage by consent decree on March 23, 2011.  The consent decree, which is discussed in more detail below, awarded Eugene the parties' marital residence (subject to a mortgage) and awarded Sandra the exclusive use of the residence until their minor child turned 18.  The decree also required Sandra to maintain the residence.

¶3　　　　Subsequently, Sandra petitioned the court to hold Eugene in contempt, alleging he had stopped making the mortgage payments on the residence; and Eugene petitioned the court to order Sandra to vacate the residence, alleging she had failed to maintain it.  After an evidentiary hearing, the court found Sandra had violated the consent decree by failing to maintain the residence and ordered her to vacate the residence.  The court also found the decree ambiguous and ruled that the provision of the decree that allowed Sandra to live in the residence was a spousal maintenance obligation.  Accordingly, the court found Eugene had violated the consent decree by failing to pay spousal maintenance (in the form of the mortgage payments on the residence) and ordered him to pay Sandra spousal maintenance directly in the amount of $1,089.59 -- the amount of the monthly mortgage payment on the residence -- with the obligation beginning after she vacated the residence.

## DISCUSSION

¶4　　　　This appeal requires us to review the superior court's interpretation of the decree, and thus, our review is de novo.  *Cohen v.*

*Frey*, 215 Ariz. 62, 66, ¶ 10, 157 P.3d 482, 486 (App. 2007). Eugene first argues the court should not have ordered him to pay spousal maintenance because the decree only gave Sandra the right to live in the residence, rather than the right to any monetary spousal maintenance. Sandra, on the other hand, argues the decree granted her spousal maintenance -- which essentially took the form of housing -- and thus, Eugene was required to pay her monetary spousal maintenance when the court ordered her to vacate the residence.

**¶5**        A consent decree is "an independent resolution by the court of the issues before it and rightfully is regarded in that context and not according to the negotiated intent of the parties." *In re Marriage of Zale*, 193 Ariz. 246, 249, ¶ 11, 972 P.2d 230, 233 (1999) (citation omitted).[1] The general rules of interpretation for a written document apply to the interpretation of a consent decree, *Cohen*, 215 Ariz. at 66, ¶ 11, 157 P.3d at 486, but we may not consider parole evidence, *Zale*, 193 Ariz. at 249-50, ¶¶ 10-15, 972 P.2d at 233-34. The first step in construing a consent decree is to determine if it is ambiguous, which is a question of law for the court. *Cohen*, 215 Ariz. at 66, ¶ 11, 157 P.3d at 486. A decree is ambiguous if it is subject to more than one reasonable interpretation. *Id.*

**¶6**        The parties have each offered a reasonable interpretation of the decree, and thus, we agree with the superior court that the decree is ambiguous. Although Eugene argues the decree is not ambiguous and is subject to one meaning only, he overlooks that the meaning of the decree is derived from its context and structure. *See Cohen*, 215 Ariz. at 66, ¶ 12, 157 P.3d at 486. Eugene's interpretation of the decree cannot be squared with other provisions of the decree that pertain to spousal maintenance. Although the provision of the decree that granted Sandra the right to live in the residence does not mention monetary spousal maintenance, it, as well as other provisions in the decree, refer to spousal maintenance.

**¶7**        The consent decree is roughly divided into three sections: an "Affirmations Section" beginning at page four containing the parties' factual and legal affirmations; a "Findings Section" beginning at page one containing the court's findings; and an "Orders Section" beginning at page three containing the court's orders.

---

[1]The parties have argued it is the intent of the court, and not the negotiated intent of the parties, that governs the interpretation of the decree, and thus, we have resolved this appeal under that framework.

¶8        In paragraph six of the Affirmations Section labeled "Maintenance/Support," the parties agreed "that spousal maintenance and child support should be as outlined above." The reference to "as outlined above" included paragraph ten of the Findings Section, which read as follows:

> 10. **Spousal Maintenance/Support**
>
> a. The parties agree that [Sandra] shall live in the aforementioned residence and enjoy its exclusive use until the parties' minor child reaches the age of 18 or until [Sandra] abandons the premises. [Sandra] is responsible for maintenance of the residence. This provision shall terminate if [Sandra] should damage the premises or fail to maintain beyond normal wear and tear.
>
> b. The parties agree that [Eugene] shall pay **child support** to [Sandra] through the clearinghouse in the amount of **$800.00** per month to commence on April 1, 2011.

Additionally, paragraph two of the Orders Section read as follows: "**SPOUSAL MAINTENANCE/SUPPORT:** [Eugene] shall pay child support to [Sandra] through the clearinghouse in the amount of $800.00 per month." Paragraph two of the Orders Section was labeled like paragraph ten of the Findings Section but, unlike paragraph ten of the Findings Section, did not reference Sandra's right to live in the residence; instead, it simply addressed child support.

¶9        We examine the provisions of the decree to determine the court's intent. *See Lopez v. Lopez*, 125 Ariz. 309, 310, 609 P.2d 579, 580 (App. 1980) ("The intention of the court must be determined from all parts of the judgment . . . ." (citations omitted)). To accept Eugene's argument would require us to, first, ignore the provisions in the Affirmations Section where the parties affirmed spousal maintenance and affirmed it would be "as outlined above." Second, it would require us to ignore the references to spousal maintenance contained in the Findings Section and Orders Section. Third, it would be incompatible with the structure of paragraph ten of the Findings Section, in which subsection (a) referred to Sandra's right to live in the residence and subsection (b) referred to Eugene's obligation to pay Sandra child support. The heading of that

section signified it pertained to two subjects: spousal maintenance and child support. And, because subsection (b) dealt specifically with the subject of child support, the most logical reading is that subsection (a) dealt with the other subject -- spousal maintenance.

¶**10** Moreover, Sandra's right to live in the residence provided her with a basic necessity -- housing -- which supports interpreting the decree as awarding spousal maintenance. We must interpret the decree in the context of the court's statutory duty to ensure that the division of marital property and award of spousal maintenance is fair and equitable. Ariz. Rev. Stat. ("A.R.S.") § 25-317(B)-(C) (2007); *Cohen*, 215 Ariz. at 67, ¶ 14, 157 P.3d at 487. Because we presume the court complied with this duty, *see Cohen*, 215 Ariz. at 67, ¶ 14, 157 P.3d at 487, it would make no sense to interpret the decree as not providing for spousal maintenance when, at the time the court entered it, the record reflected the parties had been married more than 23 years; Sandra's income was only approximately 15% of Eugene's income; and she was to become the "primary physical custodian" of their minor child.[2] *See Benson v. State*, 108 Ariz. 513, 515, 502 P.2d 1332, 1334 (1972), *quoted with approval in Zale*, 193 Ariz. at 250-51, ¶ 18, 972 P.2d at 234-35 ("A judgment which is ambiguous and uncertain may be read in connection with the entire record and construed accordingly.").

¶**11** In sum, harmonizing all of the provisions in the decree and assessing its overall structure in light of the court's statutory duty, we agree with the superior court that Sandra's right to live in the residence was a form of spousal maintenance.

¶**12** Eugene next argues that even if Sandra's right to live in the residence was a form of spousal maintenance, it terminated when she failed to maintain the residence. Based on the placement of the termination provision, *see supra* ¶ 8, it is unclear whether "this provision" refers to the entire spousal maintenance provision generally, Sandra's exclusive use of the residence, or merely the prior sentence outlining Sandra's responsibility to maintain the residence. The termination provision, then, is also ambiguous because it is subject to more than one reasonable interpretation. *See supra* ¶ 5.

---

[2]The parties' child support worksheet did not reflect that Eugene was paying spousal maintenance or that Sandra was receiving spousal maintenance or the in-kind value of spousal maintenance.

¶13     As discussed, Sandra's right to live in the residence was a form of spousal maintenance.  And, because the consent decree gave Sandra the right to live in the residence until the parties' minor child turned 18, the decree awarded her a finite number of years of spousal maintenance.  If we were to interpret the termination provision as applying to the entire spousal maintenance provision, such an interpretation would conflict with Sandra's entitlement to spousal maintenance for this finite period.  *Cf. Cohen*, 215 Ariz. at 66, ¶ 12, 157 P.3d at 486 (appellate court will not "assign meaning to one provision which would render other provisions meaningless").  Therefore, because the consent decree entitled Sandra to spousal maintenance, the termination provision only applied to Sandra's exclusive use of the residence.  Although she forfeited her right to live in the residence because she failed to maintain it, she did not forfeit her right to spousal maintenance.  Thus, we agree with the superior court that once Sandra vacated the residence, she became entitled to spousal maintenance in an amount equal to the monthly mortgage payments.

¶14     The superior court did not specify a termination date for spousal maintenance, which, as discussed, is to occur when the parties' minor child turns 18.  Therefore, pursuant to the consent decree and A.R.S. § 12-2103 (2003), we modify the superior court's order to specify Eugene's obligation to pay Sandra spousal maintenance, to begin after she vacated the premises, will terminate when the parties' minor child turns 18.

¶15     Eugene and Sandra have each requested attorneys' fees on appeal but neither cited a basis for a fee award.  Thus, we deny the fee requests.  *See* Ariz. R. Civ. App. P. 21; *In re Marriage of Kassa*, 231 Ariz. 592, 594, ¶ 7, 299 P.3d 1290, 1292 (App. 2013).  We award Sandra her taxable costs on appeal, however, contingent upon her compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶16     For the foregoing reasons, we affirm the order of the superior court as modified.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh