NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

TROY THOMPSON, *Petitioner/Appellant,*

*v.*

JENNIFER A. THOMPSON, *Respondent/Appellee.*

No. 1 CA-CV 15-0596 FC
FILED 5-26-2016

Appeal from the Superior Court in Maricopa County
No. FC2012-008217
The Honorable Rodger E. Brodman, Judge

**AFFIRMED IN PART; VACATED IN PART; AND REMANDED WITH
INSTRUCTIONS**

COUNSEL

Underwood Law Office, Phoenix
By Sonya E. Underwood
*Counsel for Petitioner/Appellant*

Carson Messinger PLLC, Phoenix
By Michael Nevels
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Patricia K. Norris joined.

---

**J O N E S**, Judge:

**¶1**        Troy Thompson (Father) and Jennifer Thompson (Mother) each petitioned the family court to enforce the provisions of its earlier dissolution decree and to modify its child support order.  Father also petitioned for a modification of parenting time.  Following an evidentiary hearing, the court ruled on the petitions and Father appealed.  For the following reasons, we affirm in part, vacate in part, and remand with instructions.

**FACTS[1] AND PROCEDURAL HISTORY**

**¶2**        Father and Mother were divorced in August 2013.  At the time, the family court found Father had a conflicted relationship with his two daughters, S.T. and B.T. (collectively, the Children).  The court awarded the parties joint legal decision-making authority with Mother having "presumptive decision-making authority."  The court also awarded Mother primary physical custody and, noting concern with Father's delay in beginning therapeutic reunification services, limited Father's parenting time to six hours per week.  Father was ordered to pay Mother $865 per month in child support, $200 per month for the children's orthodontic expenses, child support arrearages of $5,871.50, $900 per month in spousal maintenance through December 1, 2016 and then $600 per month through December 1, 2018, and spousal support arrearages of $7,200.  Father was also required to provide medical insurance for the Children and awarded the dependent child tax deduction for S.T. every year and for B.T. every two out of three years.

**¶3**        Within the decree, the family court ordered an equal division of the parties' community property, which included UPS common stock and a pension, and an equal division of their community debts to Bank of

---

[1]        We view the facts in the light most favorable to upholding the family court's orders.  *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, ¶ 5 (App. 1998) (citing *Mitchell v. Mitchell*, 152 Ariz. 317, 323 (1987)).

America, Chase, Kohl's, Genesis, and Cox Communications. The family court ordered the parties to have a qualified domestic relations order (QDRO) prepared to properly distribute the pension funds, with the preparation costs to be shared equally. The court also ordered Father to make an equalization payment of $3,911 following allocation of the parties' vehicles. Mother was awarded seventy-five percent of her attorneys' fees and costs.

¶4 Shortly after the family court entered the dissolution decree, Mother filed a motion to amend the decree to address allocation of Father's 401(k) account. In September 2013, the court granted Mother's motion and ordered the 401(k) account to be split evenly between Mother and Father.

¶5 In February 2014, Father sold all of the UPS stock, including Mother's portion, without her knowledge. Additionally, he had not paid any portion of his share of the community debts, and both parties were unable to cooperate in preparing the QDRO.

¶6 In December 2014, Mother filed a petition for entry of a separately prepared QDRO and a petition to modify child support. Father counter-petitioned for modification of child support and parenting time and for enforcement of the decree, alleging Mother had not cooperated with the attorney he engaged to prepare the court-ordered QDRO.

¶7 In March 2015, the family court held a resolution management conference, wherein it ordered Mother and Father to each file an affidavit of financial information and requested a family court conciliator to interview the Children. The court directed Mother and Father to each file an individual prehearing memorandum identifying the witnesses and exhibits they intended to present at the hearing and "specify[ing] in detail what you want the Court to do and explain why that is reasonable." The court also asked the parties to make any requests for findings of fact prior to the evidentiary hearing scheduled for May 2015.

¶8 After considering each parties' prehearing memorandum and holding a hearing, the family court denied Father's petition to modify parenting time; increased Father's child support obligation to $1,175 per month; terminated Father's spousal maintenance obligation as a result of Mother's remarriage; ordered Father pay Mother $300 per month until his spousal maintenance arrearage of $3,529.48 plus interest of $618 was satisfied; ordered Father pay $8,474 to satisfy his portion of the debts owed to Bank of America and Chase; and determined Mother was entitled to $18,110 including interest from the sale of her share of the UPS stock. To

resolve the impasse in the preparation of the QDRO, the court ordered the parties to hire a designated attorney to prepare a QDRO that evenly divided Father's pension and 401(k) account. Because the court found Father had "demonstrated he had no ability to pay Mother without using his 401(k) plan," it ordered the amounts set forth above be withdrawn from Father's 401(k) account to satisfy those obligations.

¶9          The family court further found Father behaved unreasonably by refusing to pay his debts as delineated within the decree, selling stock that had been awarded to Mother, "dragging his feet" in the preparation of a QDRO, and failing to engage in court-ordered counseling. It therefore again awarded Mother seventy-five percent of her reasonable attorneys' fees pursuant to Arizona Revised Statutes (A.R.S.) section 25-324(A).[2] Father timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

### I.     The UPS Stock Sale Proceeds

¶10          Father first argues the family court erred in awarding Mother $18,110 from Father's 401(k) account to compensate her for her share of the proceeds resulting from Father's unauthorized sale of the UPS stock. The issue presents a mixed question of fact and law. *Muchesko v. Muchesko*, 191 Ariz. 265, 271 (App. 1997) (citation omitted). We accept the family court's findings of fact unless clearly erroneous and review its legal conclusions *de novo. Id.* at 271-72.

#### A.     Award Amount

¶11          Father first challenges the amount of the award. He argues Mother did not petition to "receive more than she was entitled to receive on the date that the stock was sold in February of 2014" and that the court therefore erred in finding Mother was entitled to $18,110. Alternatively, he argues that because Mother did not request a specific amount, the calculation should have been left to the attorney preparing the QDRO.

¶12          Father cites *Cullen v. Auto-Owners Insurance*, 218 Ariz. 417, 419, ¶ 6 (2008), and *Villalba v. Villalba*, 131 Ariz. 556, 558 (1982), to support his argument that he is entitled to fair notice of the relief sought and that

---

[2]     Absent material changes from the relevant date, we cite a statute's current version.

Mother's petition was not specific enough. While these cases generally support the proposition that the opponent of a claim must be given fair notice of the nature of the relief sought, and Arizona Rule of Family Law Procedure 91(A)(1) requires a party filing a post-decree modification petition to "set[] forth with specificity all relief requested," nothing in the law requires a party to request a specific dollar amount in his pleading as a prerequisite to recovery. Moreover, contrary to Father's assertion, Mother did request the family court "order [Father] to pay over to her one half of all proceeds from the sale of community personal property, together with interest thereupon for the delay in his payment," both in her petition and in her prehearing memorandum.[3] And, so long as the court had sufficient evidence before it to determine the value of the stock, it need not delegate that responsibility to another person.

**¶13**        Father also argues the family court's calculation is incorrect, and Mother was only entitled to $13,409 — half the market value of the stock at the time the decree was entered.[4] However, "the selection of a valuation date rests within the wide discretion of the trial court and will be tested on review by the fairness of the result." *Sample v. Sample*, 152 Ariz. 239, 242-43 (App. 1986).

**¶14**        Here, approximately six months after entry of the decree, Father sold property belonging to Mother without her knowledge or consent. Because Mother received and maintained a separate property interest in the portion of the UPS stock awarded to her in the decree, she

---

[3]        Father objects to our consideration of Mother's prehearing memorandum, asserting the family court ordered the parties to file a joint prehearing memorandum and complaining that it was untimely filed. But, the record clearly reflects the court ordered the parties "are not required to file a Joint Prehearing Statement. Instead, each party is required to file [a] separate Prehearing Memorandum." And, although Mother filed her statement only two days before the hearing, Father does not cite to any point in the transcript where he objected to the timeliness of Mother's prehearing memorandum or asserted he has been prejudiced by its late filing, and we find none. By failing to object, Father has waived any claim of error. *See W.R. Skousan Contractors, Inc. v. Chatter*, 24 Ariz. App. 153, 156 (1975).

[4]        Father claims Mother agreed to this valuation. However, Father supports this contention with a citation to a non-existent portion of an exhibit, and we do not find any acknowledgement, or any other reference to this sum by Mother, elsewhere in the record.

was entitled to receive the increase in value of her separate property over time. *See Koelsch v. Koelsch*, 148 Ariz. 176, 181 (1986) ("When the community property is divided at dissolution pursuant to the mandate of A.R.S. § 25-318, each spouse receives an immediate, present, and vested separate property interest in the property awarded to him or her by the trial court."). Had the family court awarded Mother only $13,409, it would have unfairly allowed Father to profit from the market appreciation and interest earned from Mother's separate property.

**¶15** Finally, Father argues the number of shares had increased since entry of the decree and the family court allocated the incorrect number to Mother when calculating its award. Because neither party requested specific findings of fact, despite the court's direction to make such requests prior to the hearing if so desired, we will presume the court found every fact necessary to support its judgment and will sustain the court's judgment "if any reasonable construction of the evidence justifies it." *Berryhill v. Moore*, 180 Ariz. 77, 82 (1994) (citing *Neal v. Neal*, 116 Ariz. 590, 592 (1977), and *Ziggy's Opportunities, Inc. v. I-10 Indus. Park Developers*, 152 Ariz. 104, 106-07 (App. 1986)).

**¶16** Father admitted selling the UPS stock and offered to reimburse Mother for her portion of the proceeds from his 401(k) account. Additionally, reports created by UPS were admitted into evidence, which reasonably support the court's finding that Mother's share of the stock proceeds was $17,138.38. Adding interest at the rate of 4.25% per annum from the date of the sale results in the sum total ordered by the court of $18,110. We therefore find no error.

### B. Capital Gains Tax

**¶17** Father next argues the family court erred by failing to account for, or hold Mother responsible for, the capital gains tax he paid on Mother's share of the UPS stock upon its sale. In its order, the court specifically recognized the capital gains tax paid, stating:

> The Court makes no correction for the capital gains taxes as an equitable adjustment in Mother's favor. Father had no legal right to sell the UPS stock, and the Court believes he should pay Mother's share of the capital gains taxes as a consequence of his improper behavior.

We review the division of community property for an abuse of discretion. *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007) (citing *Miller v.*

*Miller*, 140 Ariz. 520, 522-23 (App. 1984), and *Lee v. Lee*, 133 Ariz. 118, 121 (App. 1982)).

¶18 The family court is authorized to "adjust the value of the property assigned to each spouse so that neither spouse profits by misuse or concealment of the commonly-held property." *Martin v. Martin*, 156 Ariz. 452, 456 (1988); *see also* A.R.S. § 25-318(A), (C) (authorizing the court to make an equitable division of community property after considering "excessive or abnormal expenditures, [or the] destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common"). Because Father improperly disposed of Mother's previously awarded share of the UPS stock, he incurred capital gains taxes — an expense Mother did not agree to incur. We find no error in the court's "equitable adjustment" in light of Father's misuse of community property previously awarded to Mother.

## II. Credit Card Debts

¶19 Father argues the family court erred in awarding Mother $8,474 from Father's 401(k) account in satisfaction of his obligation to pay one-half of the community's debts to Bank of America and Chase, plus interest, while ordering she be solely responsible to the debtors. We likewise review the resolution of community debt for an abuse of discretion. *See In re Marriage of Inboden*, 223 Ariz. 542, 544, ¶ 7 (App. 2010) (citing *Boncoskey*, 216 Ariz. at 451, ¶ 13).

¶20 We agree with Father's assertion that the decree is to be construed following the general rules of construction of a written instrument. *See Lopez v. Lopez*, 125 Ariz. 309, 310 (App. 1980). However, the family court's modification order did not alter the existing rights and obligations of the parties from those ordered in the decree. Each party remains responsible for one-half the debt. After expressing its disbelief that "the parties will ever be able to reach a resolution to jointly pay for this debt," the court ordered Mother pay the accounts and Father's portion be satisfied from his 401(k) account. Although Father asserts Mother had not yet paid her share of the debt, this has no bearing upon Father's responsibility to pay his share under the original decree.

¶21 Father also asserts the orders were in error because there was evidence the debts could have been reduced through settlement with the financial institutions. But, just because the banks once offered to compromise the debts does not mean the offers were still available. Reasonable evidence, including Mother's testimony and financial

statements from Chase and Bank of America, supports the court's finding that Father owed $8,474 toward these debts, and this amount is consistent with the dissolution decree. We find no error in the court's reliance upon that evidence or in the award of $8,474 to Mother from Father's 401(k) account.

## III. The Family Court's Parenting Time and Support Orders

**¶22** Father also argues the family court erred in its parenting time and support orders. We review parenting time and support modification orders for an abuse of discretion. *In re Marriage of Priessman*, 228 Ariz. 336, 338, ¶ 7 (App. 2011) (spousal support) (citing *Van Dyke v. Steinle*, 183 Ariz. 268, 273 (App. 1995)); *Baker v. Meyer*, 237 Ariz. 112, 116, ¶ 10 (App. 2015) (parenting time) (citing *Owen v. Blackhawk*, 206 Ariz. 418, 420, ¶ 7 (App. 2003)); *Jenkins v. Jenkins*, 215 Ariz. 35, 37, ¶ 8 (App. 2007) (child support) (citing *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999)). An abuse of discretion occurs when "the record [is] devoid of competent evidence to support the decision of the trial court." *Borg v. Borg*, 3 Ariz. App. 274, 277 (1966) (quoting *Fought v. Fought*, 94 Ariz. 187, 188 (1963)).

### A. Parenting Time

**¶23** Father argues the family court ignored evidence that the Children would benefit from having additional parenting time with him and therefore abused its discretion in denying his petition for additional parenting time. Although a court "shall not restrict a parent's parenting time rights unless it finds that the parenting time would endanger seriously the child's physical, mental, moral or emotional health," A.R.S. § 25-411(J), in the absence of a proper request for findings of fact and conclusions of law under Arizona Rule of Family Law Procedure 82(A), the family court need not make specific findings that it has reached such a conclusion in order to restrict parenting time, *Hart v. Hart*, 220 Ariz. 183, 187, ¶ 16 (App. 2009) (comparing the requirement that a best interests finding be specified on the record according to A.R.S. § 25-403(B) and the lack of such a requirement in A.R.S. § 25-411(J)); *see also Berryhill*, 180 Ariz. at 82 ("[T]his court on appeal must presume that the trial court found every fact necessary to support the judgment."). Because we do not reweigh evidence on appeal, *Reeck v. Mendoza*, 232 Ariz. 299, 303, ¶ 14 (App. 2013), we look to the record only to determine whether the evidence reasonably supports the family court's decision, *see Borg*, 3 Ariz. App. at 277.

**¶24** We conclude the record here contains reasonable evidence to justify restricting Father's parenting time under A.R.S. § 25-411(J). Mother

testified the Children are not comfortable spending the night at Father's residence, confidential interviews conducted with the Children revealed continued conflict between Father and the Children, and Father and Mother both testified Father had not engaged in any therapeutic reunification counseling with the children, which was required by the original decree. In light of this evidence, the court specifically noted "if Father is truly interested in rapprochement with his daughters, he is going to have to put forth a better effort than he has demonstrated to date." On this record, we find no abuse of discretion in the denial of Father's petition to modify parenting time.

### B.     Child Support

¶25         Father argues the court erred in calculating both his and Mother's income for purposes of modifying child support. We disagree.

### 1.     Mother's Income

¶26         Father argues Mother voluntarily reduced her income and the family court erred in attributing her only $3,120 per month because she has the potential to earn as much as she was at the time the court entered the original decree — $4,178 per month. We will not disturb the court's findings of fact so long as they are reasonably supported within the record. *See supra* ¶ 23.

¶27         Pursuant to the Arizona Child Support Guidelines:

> If a parent is . . . working below full earning capacity, the court may consider the reasons. If earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a parent up to his or her earning capacity. If the reduction in income is voluntary but reasonable, the court shall balance that parent's decision and benefits therefrom against the impact the reduction in that parent's share of child support has on the children's best interest.

A.R.S. § 25-320 app. § 5(E) (Guidelines). Mother presented evidence her earning capacity had decreased since entry of the decree because, at that time, she was working in a contract position. She also provided letters from her employer regarding her income and asserting that the contract position that had paid her thirty dollars per hour at the time of the decree was a temporary position. While the family court apparently accepted the change in Mother's hourly wage, it found no reason why Mother could not work full-time and attributed to Mother an income of $3,120 per month based

upon her current eighteen dollar per hour wage. This conclusion reflects a balancing of the factors identified within the Guidelines, and is supported by the record. We therefore find no error in the court's determination of Mother's income for purposes of calculating child support.

### 2. Father's Income

**¶28** Father also argues the court erred in finding "no reason to change Father's income from the Decree" — $7,452 per month — because, he contends, the evidence is undisputed that he earns only $6,018.70 per month. Although the Guidelines state that, "[g]enerally, the court should not attribute income greater than what would have been earned from full-time employment," Father fails to address the direction that the court "may, however, consider income actually earned that is greater than would have been earned by full-time employment if that income was historically earned from a regular schedule and is anticipated to continue into the future." Guidelines § 5(A); *see also McNutt v. McNutt*, 203 Ariz. 28, 31-32, ¶ 14 (App. 2002) ("[W]e do not believe the amended Guidelines entitle a parent who continues to work the same schedule as he or she consistently worked during the marriage to a *decreased* support obligation.") (citing *Jensen v. Bowcut*, 892 P.2d 1053, 1057 n.3 (Utah Ct. App. 1995)).

**¶29** Father's pay stubs, tax documents, historical earnings, and Mother's testimony support the finding that he continues to earn the same amount he was making at the time the court entered the original decree. Therefore, we find no error in the court's determination of Father's income for purposes of calculating child support.

### C. Spousal Support Arrearages

**¶30** Father argues the family court erroneously miscalculated spousal maintenance arrearages. We agree.

**¶31** In its June 12, 2015 modification order, the family court found Father's spousal maintenance obligation had terminated April 1, 2015 because of Mother's remarriage and calculated he had paid a total of $45,427.02 to date, leaving $3,529.48 in arrearages and $618 in interest. We are unable to find support for this calculation in the record. To the contrary, a case status report reflects Father paid a total of $46,487.40 in spousal support through May 31, 2015. Accordingly, the portion of the court's order regarding arrearages is vacated. The matter is remanded for entry of an order reflecting a total spousal support arrearage amount of $2,469.10 —

that being the difference between what was owed and the amount actually paid through May 31, 2015 — with accrued interest of $432.[5]

## IV. Fraud Claims

¶32 Father further argues the family court erroneously failed to address his claims that Mother committed fraud regarding the debts to Kohl's, Genesis, and Cox Communications and by claiming she was owed a portion of the parties' 2012 tax refund. However, neither the community debts to Kohl's, Genesis or Cox Communications, nor the 2012 tax refund, were at issue at the time of the court's modification order. Although Mother originally claimed she was entitled to a portion of the parties' 2012 tax return, she abandoned the issue when she did not identify it within her prehearing memorandum. *Cf. State v. Joyner*, 215 Ariz. 134, 136 n.1, ¶ 4 (App. 2007) (noting the argument identified in sentencing memorandum was "apparently abandoned" when not raised during the sentencing hearing).

¶33 Additionally, Father's argument regarding the Kohl's, Genesis, and Cox Communications debts is both moot and untimely. Father essentially alleges Mother fraudulently misrepresented that these debts were community obligations during the original proceedings. But, the time to raise such an issue expired when he did not appeal the decree. *See* ARCAP 9(a) (requiring a party to file a notice of appeal "no later than 30 days after the entry of the judgment from which the appeal is taken"). Moreover, Father admitted the debts to Bank of America and Chase — the only debts at issue here — were legitimate, and the family court properly addressed Mother's request for enforcement of Father's obligation to pay his portion.

¶34 Father's claims of misconduct are untimely and unsupported by the record. We therefore find no error.

## V. Attorneys' Fees Award

¶35 Father argues the family court erred in awarding Mother seventy-five percent of her attorneys' fees. We review an award of attorneys' fees in a dissolution proceeding for an abuse of discretion. *Magee*

---

[5] We calculate the interest accrued on the balance of $2,469.10 for twenty-one months using a rate of ten percent per annum — the same rate used by the family court.

*v. Magee*, 206 Ariz. 589, 590, ¶ 6 (App. 2004) (citing *In re Marriage of Robinson & Thiel*, 201 Ariz. 328, 335, ¶ 20 (App. 2001)).

**¶36** Father argues the family court advised the parties at the resolution management conference it would consider the issue of attorneys' fees after the trial and that Mother did not comply with the court's request that settlement offers be withheld until it requested the offers be submitted. The minute entry order that issued following that conference contains no such instruction. In fact, it states, "If a party requests an award of attorneys' fees and costs, the request should be noted in a single sentence in the Prehearing Memorandum along with citations to the legal authority on which the request is based." We also find no instruction regarding the time to make settlement offers.

**¶37** Father also contests the family court's finding that he "dragged his feet" concerning the preparation of a QDRO. Although the record contains conflicting evidence on this point, we defer to the family court to resolve that conflict, and find no error in its conclusion. *See supra* ¶ 23.

**¶38** Father also contests what he asserts as the family court's determination that Mother was the "prevailing party," because that determination is inconsistent with its finding that she did not cooperate with the attorney Father engaged for purposes of preparing a QDRO, unnecessarily called her oldest daughter to testify, and did not obtain the relief she requested as it related to the QDRO. However, whether a party prevails in the proceeding is irrelevant to the determination of an award of attorneys' fees under A.R.S. § 25-324. *Breitbart-Napp v. Napp*, 216 Ariz. 74, 84, ¶ 39 (App. 2007) (citing *Burnette v. Bender*, 184 Ariz. 301, 306 (App. 1995)). Pursuant to A.R.S. § 25-324(A):

> The court from time to time, after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceeding under this chapter or chapter 4, article 1 of this title.

Thus, an award of fees under A.R.S. § 25-324 is predicated on financial disparity and the reasonableness of the parties' conduct.

**¶39** Here, the family court found Father behaved unreasonably, and this finding, supported by the record, is, alone, sufficient to support the award. *Mangan v. Mangan*, 227 Ariz. 346, 353 n.13, ¶ 27 (App. 2011) (noting "'an applicant need not show both a financial disparity and an unreasonable opponent in order to qualify for consideration for an award'") (quoting *Magee*, 206 Ariz. at 591 n.1, ¶ 8). Moreover, specific findings are not required absent a request. *See* A.R.S. § 25-324(A) ("On request of a party or another court of competent jurisdiction, the court shall make specific findings concerning the portions of any award of fees and expenses that are based on consideration of financial resources and that are based on consideration of reasonableness of positions."); *Myrick v. Maloney*, 235 Ariz. 491, 495, ¶ 10 (App. 2014) ("'There is no obligation for the trial court to make findings of fact under [A.R.S.] § 25-324' in the absence of a request.") (quoting *MacMillan v. Schwartz*, 226 Ariz. 584, 592, ¶ 39 (App. 2011)). Father did not request specific findings of fact, and, in the absence of such, we presume the court's decision is supported by the record. *See id.*; *supra* ¶ 15.

**¶40** Father also relies on A.R.S. § 12-341.01 in arguing a fee award should be crafted to "mitigate" the expense of litigation. Although this section authorizes an award of fees to the prevailing party in an action "arising out of a contract," the current dispute concerns modification and enforcement of a judicial decree. Therefore, A.R.S. § 12-341.01 does not apply. In this domestic relations action, A.R.S. § 25-324(A) controls and contains no limitation other than that the fees and costs awarded be reasonable. Mother's request for fees was supported by affidavit, which the family court evaluated in determining seventy-five percent of her reasonable attorneys' fees and costs to total $14,595 and $138, respectively. *See* Ariz. R. Fam. L.P. 78(D)(3) ("A claim for attorneys' fees, costs, and expenses shall be supported by an itemized affidavit, exhibits, or, at the discretion of the court, by testimony."). We find no error in this award.

## CONCLUSION

**¶41** For the foregoing reasons, we affirm the family court's modification order in all respects except Father's spousal maintenance arrearages, which we vacate and remand for entry of an order consistent with the direction contained herein. *See supra* Part III(C).

**¶42** Both parties request attorneys' fees pursuant to A.R.S. § 25-324(A). After considering the financial resources and reasonableness of the

parties, and concluding Mother is the prevailing party on appeal, we award Mother her reasonable attorneys' fees and costs on appeal upon compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama